## A98A1836. O'NEAL v. THE STATE.
(513 SE2d 50)

ANDREWS, Judge.

Aubrey Allen O'Neal appeals from his conviction of voluntary manslaughter of Robert Fountain.

Viewed in favor of the jury's verdict, the evidence was that O'Neal allowed Christie Barnette, a 25-year-old woman, to live in his home. She occupied the front bedroom of the home, with her dog and three cats, while O'Neal occupied a rear bedroom. O'Neal contended that the relationship was sexual and Barnette slept with him when he was not working, but Barnette said it was platonic. Prior to moving in with O'Neal, Barnette had lived with Ricky Willingham.

After moving in with O'Neal, Barnette had allowed Willingham into the house to stay with her for a weekend in October 1996, without O'Neal's knowledge. Barnette told Willingham she would not return to living with him and he became angry. When he would not leave, she pretended to call the police, but called O'Neal instead and told him he would not leave. O'Neal called the police and Willingham was arrested.

Barnette had also dated Fountain earlier and became reacquainted with him before Thanksgiving 1996. She began regularly talking to Fountain on the phone and O'Neal became upset by this. She and O'Neal encountered Fountain before Christmas at a gas station and words were exchanged between the two men.

On her birthday, December 31, Barnette called Fountain from her parents' home, where she was visiting with O'Neal, and told him to go to O'Neal's house and wait for her, which he did. When she returned, she snuck Fountain into the house while O'Neal was gone because she knew O'Neal would have a problem with his presence. After O'Neal returned, she spent several hours talking with him in the living room while Fountain hid in her bedroom. Around 4:30 a.m. on January 1, 1997, O'Neal went to work to help another clerk stock the convenience store's cooler. Barnette took her dog and cats into the bedroom with Fountain and they talked and listened to music for a while. She then went into O'Neal's bedroom to use his bathroom and, when she returned, she had O'Neal's rifle. She asked Fountain to check to see whether it was loaded and it was not. Barnette then returned the gun to O'Neal's bedroom.

Barnette, wearing lingerie, and Fountain, wearing his underwear, were lying on her bed when O'Neal arrived home and heard music and voices from her room. O'Neal went back to his truck and got his .35 caliber Marlin rifle, which was loaded. O'Neal turned the door handle and, when it did not open, he shoved it with his shoulder and knocked it off its hinges.

O'Neal said to Fountain, "[W]hat did I say I was going to do to you the next time I ever saw you? You are a S-O-B."[1] Fountain was then shot in the right arm and side. O'Neal then hit Fountain in the head with the rifle butt repeatedly, cracking and penetrating his skull and breaking the rifle. Either of these injuries was potentially fatal.

O'Neal went to the kitchen and retrieved a knife which he placed on the floor beside the bed. He then told Barnette to tell police that Fountain was assaulting her and he came to her rescue. He called 911 and advised the police he had shot a guy who had broken in on his girlfriend and tried to rape her.

The evidence was sufficient. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. O'Neal's first and second enumerations are that the trial court violated his federal Sixth and Fourteenth Amendment rights and his corresponding Georgia rights by refusing to allow questioning of Barnette about crime scene photographs which had been stipulated into

---

[1] Barnette's parents both testified that they had heard O'Neal threaten Fountain.

evidence and by not allowing him to discuss in his closing argument photos showing animal feces in Barnette's room and other photos that showed she was messy.

There is no independent argument, either below or here, concerning the State constitutional grounds and we do not address those grounds. *Fritzius v. State*, 225 Ga. App. 642, 643 (484 SE2d 743) (1997).

The objection voiced below was that not allowing further cross-examination was an "impermissible limitation on the right of cross-examination. I think it deprives my client of his rights under the 6th and 14th Amendments to the United States Constitution . . . and . . . I move for a mistrial." No further argument was made concerning the alleged constitutional violations.

Regarding the court's direction that he not mention those photos in closing solely for the purpose of showing Barnette's sloppiness, counsel stated that limited his argument and would "deny my client effective assistance of counsel under the 6th amendment and 14th amendment of the United States Constitution and . . . I would move for a mistrial. . . ."

"[R]ote repetition of constitutional provisions is totally ineffective in raising a constitutional issue for this court's determination. See *Taylor v. State*, 177 Ga. App. 624, 628 (3) (340 SE2d 263) (1986), where we pointed out that "merely intoning" a citation to a constitutional provision fails to provide a basis for our examination of the right purportedly deemed to have been violated. (Cit.)" [Cit.]

*Hall v. State*, 200 Ga. App. 585-586 (1) (409 SE2d 221) (1991).

Therefore, there is nothing for us to consider regarding these two enumerations.

2. O'Neal contends that the trial court's jury instructions concerning a verdict form prepared by the court was so confusing as to leave the jury with the impression it must find him guilty of one of the three charged crimes, i.e., malice murder, felony murder, or voluntary manslaughter, and that the court's charge on aggravated assault was improper because the court had removed that charge from the jury's consideration by "directing a verdict" in O'Neal's favor as to it.

The trial court had prepared a verdict form as follows:

"We the jury find the defendant (not guilty) (guilty) of Malice Murder." The same language was included for Felony Murder and Voluntary Manslaughter. No option was given for aggravated assault, the underlying felony for the felony murder charge.

As acknowledged by the State, the court's instructions to the

jurors that they should mark out the option that did not apply were less than clear and the court incorrectly charged the jury that it could convict O'Neal of only one of the three options contained on the form. In fact, O'Neal could have been convicted of felony murder, malice murder, and aggravated assault, but only sentenced for either malice murder or felony murder with the aggravated assault merging with the felony murder at sentencing. *Hayes v. State*, 265 Ga. 1, 2 (2) (453 SE2d 11) (1995); *Malcolm v. State*, 263 Ga. 369, 371 (4) (434 SE2d 479) (1993).

A review of the entire charge given, *Mobley v. State*, 218 Ga. App. 739, 740 (2) (463 SE2d 166) (1995) and *Young v. State*, 221 Ga. App. 462, 463 (3) (471 SE2d 523) (1996) (physical precedent), including the incorrect recharge regarding whether the jury could only convict of one charge, shows that the error in the charge benefitted O'Neal. Despite his argument here, the charge as a whole made it clear to the jury that their options were to find him not guilty of all of the charges or guilty of only one of them.

Harm as well as error must be shown to authorize reversal and where none has been shown, the judgment will be affirmed. *Robinson v. State*, 229 Ga. 14, 15 (1) (189 SE2d 53) (1972); *Beene v. State*, 202 Ga. App. 857 (1) (415 SE2d 545) (1992).

*Judgment affirmed. Senior Appellate Judge Harold R. Banke concurs. Beasley, P. J., concurs as to Division 2 and in the judgment.*

DECIDED FEBRUARY 24, 1999 —
RECONSIDERATION DENIED MARCH 17, 1999.

*Fanning & Hudson, Steven E. Fanning*, for appellant.
*Peter J. Skandalakis, District Attorney, Rudjard M. Hayes, Hope F. Smelcer, Assistant District Attorneys*, for appellee.

