S03A0599. WHITNER v. THE STATE.
(584 SE2d 247)

THOMPSON, Justice.

A jury found Tim Whitner guilty of the murder of Ranson Clark, Jr. and the aggravated assault of Norris Barrow.[1] At trial, Whitner admitted committing the crimes, but asserted that he was legally insane at the time. On appeal, Whitner challenges several rulings of the trial court which relate to his defense of insanity. Finding no error, we affirm.

Throughout the day in question, Whitner, along with Ranson Clark, Jr., Norris Barrow, Michael Avery, and Jennifer Mostiller, consumed alcohol and cocaine at Barrow's home. At about 3:00 a.m., Whitner was in the living room with Clark who was asleep on a sofa; Avery, Mostiller, and Barrow were in a back room. Suddenly a commotion was heard in the living room and Clark shouted, "Tim, why you [sic] doing this to me." The others ran into the living room and observed Whitner, armed with a knife, standing over Clark. As Bar-

---

[1] The crimes took place on May 9, 1998. Whitner was indicted for malice murder, felony murder while in the commission of an aggravated assault, and aggravated assault. Trial commenced on November 1, 1999, and on November 5, 1999, a jury found Whitner guilty as charged. He was sentenced on the same day to life imprisonment for malice murder, plus 20 consecutive years for aggravated assault. A motion for new trial was filed on December 6, 1999, amended on July 29, 2002, and denied on October 29, 2002. A timely notice of appeal was filed. The case was docketed in this Court on December 31, 2002, and was submitted for a decision on briefs on April 14, 2003.

row approached the living room, he was confronted by Whitner who stabbed him several times. The witnesses did not hear an argument take place between Whitner and Clark prior to the stabbing, nor did they observe strange behavior on Whitner's part that night.

All the occupants fled from the house, except for Whitner and Clark, who was mortally wounded. The police were summoned and Whitner let them into the house, telling them that he had just killed someone. The responding officer described Whitner's demeanor as calm, coherent, and cooperative.

Clark had been stabbed 22 times and he died from his injuries. Barrow collapsed from his injuries a short distance from the house.

At trial, the various psychiatric and psychological experts disagreed on Whitner's primary diagnosis. The defense experts, Drs. Risby and Currie, diagnosed Whitner with psychosis and cocaine dependence. Dr. Currie concluded that Whitner was psychotic when he committed the crimes and was unable to distinguish right from wrong. Dr. Sapp, the State's expert, determined that Whitner was cocaine dependent and that he suffered from a substance induced psychotic disorder during intoxication, but that he was not delusional and knew the difference between right and wrong during his commission of the crimes.

1. Whitner contends that the trial court erred in restricting his inquiry during voir dire into the biases and prejudices of three prospective jurors regarding the insanity defense.

Preceding the voir dire, Whitner's counsel sought a ruling from the court permitting him to pose a series of follow-up questions to any juror who may express strong feelings about the insanity defense. Those included whether the juror believed the insanity defense to be a "cop-out," whether it is abused and should be abolished, and whether the juror would reject such a defense based on their personal beliefs. Citing *Waters v. State*, 248 Ga. 355 (3) (283 SE2d 238) (1981), the prosecutor argued that it would be improper to test the willingness of the jurors to accept Whitner's defense as such would be akin to asking them to prejudge the case. After extensive colloquy, the court ruled that Whitner would be permitted to ask whether the jurors could consider an insanity defense and the possible verdict of not guilty by reason of insanity, if so instructed by the court.

Two of the three jurors in question expressed "difficulty" or "opposition in principle" to a possible verdict of not guilty by reason of insanity, but both acknowledged that they would follow the law as it is given to them. The third juror responded that she is "a little bit leery" of an insanity defense, based on her perception of television and news reports.

In *Waters*, supra, the defense sought to ask a prospective juror

whether, if the defendant admits his guilt, she could consider evidence that he "wasn't in his right mind" when he committed the crime. This Court acknowledged that "[v]oir dire should allow both parties an opportunity to ascertain the ability of the prospective jurors to decide the case on its merits, with objectivity and freedom from bias and prior inclination." Id. at 363. However, we admonished trial courts to be cautious in allowing counsel to pose questions which ask jurors to assume that certain facts will be proven. That is because such questions may require prejudgment of the case, and may tend to improperly influence the jurors. In *Waters*, the trial court permitted counsel to inquire whether the juror would consider an insanity defense if so instructed by the court. Where the juror stated that she could consider the case based on the evidence presented and the charge of the court, we found no error in limiting the questioning on voir dire.

The conduct of voir dire is within the sound discretion of the trial court, and the court's rulings are proper absent some manifest abuse of that discretion. *Hamilton v. State*, 274 Ga. 582 (2) (555 SE2d 701) (2001); *Gatlin v. State*, 236 Ga. 707 (2) (225 SE2d 224) (1976). In the present case, none of the three jurors in question expressed any bias or prejudice against the defendant, nor did they demonstrate that they could not set aside their uncertainties about the validity of an insanity defense and consider the case on the merits. See *Godfrey v. Francis*, 251 Ga. 652 (9) (308 SE2d 806) (1983) (a juror who expressed "qualms" about accepting a defense of insanity was not automatically incompetent to serve). We conclude that the trial court's ruling in the present case was consistent with our holding in *Waters*, supra, and did not amount to an abuse of the court's discretion.

2. In light of our ruling above, any claim that the trial court erred in refusing to strike the three jurors for cause is without merit. See *Godfrey*, supra.

3. Whitner asserts that the trial court violated OCGA § 17-8-57, which prohibits the court from expressing or intimating its opinion as to what has or has not been proved or as to the guilt of the accused. However, the issue of whether OCGA § 17-8-57 was violated is not reached unless an objection or motion for mistrial is made on that ground. *Rowe v. State*, 266 Ga. 136 (2) (464 SE2d 811) (1996); *Walker v. State*, 258 Ga. 443 (3) (370 SE2d 149) (1988); *State v. Griffin*, 240 Ga. 470 (241 SE2d 230) (1978). Because Whitner failed to make the proper objection at trial, the right to raise this issue on appeal has been waived. *Rowe*, supra. Even if the issue were preserved, none of the comments cited could possibly be construed as impermissible statements of opinion or as to the guilt of the accused. At most, the statements were nothing more than commentary on the

lengthy examination of witnesses, and the court's attempt to regulate the proceedings.

4. During cross-examination of defense expert Dr. Currie, the State attempted to show that the witness was motivated by pecuniary interests and that defense counsel had employed Dr. Currie as an expert in other cases. Whitner submits that the court erred in restricting his redirect examination of the witness to refute the prosecutor's allegations on cross.

"The state of a witness's feelings toward the parties and his relationship to them may always be proved for the consideration of the jury." OCGA § 24-9-68. The State's cross-examination of Dr. Currie concerning the number of times he had been hired by defense counsel and how much he was paid was appropriate to show that the objectivity of the witness may have been clouded. Id. The record does not reflect, however, that Whitner's redirect examination of Dr. Currie was impermissibly curtailed. Accordingly, we find no error.

5. Whitner's contention that the prosecutor made improper comments during closing argument is waived by the failure to raise any objection at trial. *Barner v. State*, 276 Ga. 292 (2) (578 SE2d 121) (2003); *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999).

6. Whitner submits that he carried his burden of proving by a preponderance of the evidence, including the testimony of Drs. Risby and Currie, that he was insane and did not know right from wrong when he committed the crimes.

> Defendants are presumed sane, and a defendant claiming insanity bears the burden to prove [his] insanity by a preponderance of the evidence. Because the jury rejected [Whitner's] insanity defense at trial, we must determine on appeal "whether, after reviewing the evidence in the light most favorable to the [S]tate, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that [he] was insane at the time of the crime." Unless the evidence of insanity is overwhelming, the jury's determination that the defendant was sane should be upheld.

*Boswell v. State*, 275 Ga. 689, 691 (2) (572 SE2d 565) (2002). The testimony of a State expert that Whitner knew right from wrong at the time of the crimes, coupled with the testimony of arresting officers that he appeared rational immediately thereafter, is sufficient to authorize a rational juror to find that Whitner failed to prove his insanity by a preponderance of the evidence. *Foote v. State*, 265 Ga. 58 (1) (455 SE2d 579) (1995). As the evidence of insanity was hardly overwhelming, the jury's verdict will be affirmed. *Boswell*,

supra at 691.

In addition, the evidence was sufficient to enable a rational trier of fact to find Whitner guilty beyond a reasonable doubt of murder and aggravated assault under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 10, 2003.

*William E. Nethery*, for appellant.

*J. Tom Morgan, District Attorney, Jeanne M. Canavan, Rosemary Brewer, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.