S03A1599. BYRD v. THE STATE.

(592 SE2d 421)

SEARS, Presiding Justice.

The appellant, Jimmie Byrd, appeals from his convictions for felony murder, aggravated assault, and the possession of a firearm dur-

ing the commission of a crime.[1] On appeal, Byrd contends that the trial court erred by failing to excuse for cause two prospective jurors, by accepting a partial verdict from the jury, and by failing to charge on self-defense. For the following reasons, we conclude that these contentions are without merit, and affirm the convictions.

1. On the evening of February 16, 1996, Byrd and the victim, Kevin Moton, were involved in a minor traffic accident in the parking lot of an apartment complex. Several eyewitnesses testified that the pair engaged in what seemed like a calm conversation regarding the damage to the vehicles. They further testified, however, that during this discussion, Byrd pulled out a gun, pointed it at Moton, and shot twice, and that Moton fell to the ground. Several of the witnesses stated that they saw several young men come out of some nearby woods and walk across the street, but that they never approached Byrd and the victim. Byrd, however, testified that a group of young men approached him and Mr. Moton in a threatening way and that he (Byrd) pulled back his jacket and showed them that he had a pistol. According to Byrd, the young men then left but came back a few minutes later as he and Moton were still talking. Byrd added that one of the young men was carrying a pistol by his side and that another was approaching with both hands inside his jacket. Byrd testified that he thought he and Moton were going to be robbed and that he fired a warning shot into the ground to scare the young men. Byrd stated that he then raised his arm to aim the gun in the direction of the young men; that Moton was between Byrd and the group; that as he was turning in the direction of the group of young men, he heard a noise behind him; and that as he turned to look, his arm hit the door of the car, causing the gun to fire accidentally, with the bullet hitting Moton. Byrd added that he saw that Moton had been shot, but that to save himself from the young men, he immediately got in his car and left the apartment complex.

A state's expert testified that Moton died from one gunshot wound to the head, with the bullet entering the left eye and exiting on the right side of the back of his head. The expert also testified that the gun was touching Moton's left eye when it was fired.

---

[1] The crimes occurred on February 16, 1996, and Byrd was indicted on April 26, 1996. On October 18, 1996, a jury found Byrd guilty of felony murder, aggravated assault, and the possession offense. The trial court merged the aggravated assault conviction with the felony murder conviction, and sentenced Byrd to life in prison for felony murder and to five consecutive years in prison for the possession offense. On October 23, 1996, Byrd's trial counsel filed a motion for new trial. On April 17, 1997, the trial court appointed Byrd new counsel for appeal. The court reporter completed the certification of the trial transcript on March 20, 2002. On March 20, 2003, appellate counsel filed an amended motion for new trial. The trial court denied Byrd's motion for new trial, as amended, on May 6, 2003. Byrd filed a notice of appeal on May 15, 2003, and the appeal was docketed in this Court on July 18, 2003. The appeal was submitted for decision on briefs on September 8, 2003.

Having considered the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support Byrd's convictions.[2]

2. Byrd first contends that the trial court erred in failing to strike two prospective jurors for cause.

(a) One of the potential jurors in question, Ms. Hendrix, expressed doubts about her ability to set aside her personal experiences in deciding Byrd's case. However, when the prosecutor asked Ms. Hendrix if she would make every effort to decide Byrd's guilt or innocence "based solely upon what you hear during the course of this trial," Ms. Hendrix stated that she "would try." Because a trial court is not required to strike for cause a prospective juror who simply expresses reservations about her ability to set aside her personal experiences;[3] because a determination of bias is based on observations concerning a potential juror's demeanor and credibility, which are matters " 'peculiarly in the trial court's province' ";[4] and because Ms. Hendrix never stated a fixed and definite opinion of Byrd's guilt,[5] we conclude that the trial court did not abuse its discretion in failing to strike Ms. Hendrix for cause.[6]

(b) Byrd next contends that the trial court erred by failing to excuse for cause prospective juror Babcock. Babcock initially stated that he generally thought that there was no justification for taking another person's life and that it would cause him great difficulty to apply the law of self-defense to the facts of the case. In response to questioning by the trial court, however, Babcock stated that he would try to comply with the trial court's instructions and apply the law to the facts that he heard in court. For this reason, we conclude that the trial court did not abuse its discretion in failing to excuse Babcock for cause.[7]

3. Byrd was indicted for malice murder, felony murder, aggravated assault, and the possession offense. In addition to the foregoing crimes, the trial court charged the jury on involuntary manslaughter

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Anderson v. State*, 276 Ga. 389, 390 (578 SE2d 890) (2003); *Wilson v. State*, 271 Ga. 811, 815 (525 SE2d 339) (1999).

[4] *Anderson*, 276 Ga. at 390, quoting *Holmes v. State*, 269 Ga. 124, 126 (498 SE2d 732) (1998).

[5] *Corza v. State*, 273 Ga. 164, 166 (539 SE2d 149) (2000) ("For a juror to be excused for cause, it must be shown that he or she holds an opinion of the guilt or innocence of the defendant that is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence.").

[6] *Whitner v. State*, 276 Ga. 742, 744 (584 SE2d 247) (2003) (The decision whether to strike a juror for cause is within the discretion of the trial court, and this Court will not disturb that discretion unless it is abused.).

[7] See *Anderson v. State*, 276 Ga. at 390; *Corza v. State*, 273 Ga. at 166; *Whitner v. State*, 276 Ga. at 744.

as a lesser included offense of malice murder. The record shows that the jury had been deliberating for some unspecified period of time[8] when it sent a note to the court stating that it had reached a verdict on felony murder, aggravated assault, and the possession offense, but that it was not unanimous on the malice murder count of the indictment. The trial court instructed the jury that it could continue to deliberate or that it could return a partial verdict. The jury continued to deliberate, and after another unspecific period of time, the jury stated that it could not "come to a conclusion" on the malice murder count of the indictment, but reiterated that it had reached unanimous verdicts on the other three counts.[9] At that time, the trial court stated that the jury had been deliberating "plenty of time" and that the court would accept a partial verdict on the three counts and dead docket the malice murder count. Byrd objected to accepting the partial verdict.

On appeal, Byrd contends that the trial court erred by accepting a partial verdict on felony murder, aggravated assault, and the possession of a firearm offense. More specifically, Byrd relies on *Marshall v. State*[10] to contend that the trial court's acceptance of the partial verdict improperly curtailed the jury's deliberations on the lesser included offense of involuntary manslaughter. For the reasons that follow, we find no merit to this enumeration of error.

In *Marshall*, the jury informed the court that it had reached unanimous verdicts on felony murder, aggravated assault, and a possession offense, but that it could not reach a verdict on the malice murder count or the included offense of voluntary manslaughter. Instead of having the jury deliberate further, the trial court accepted a partial verdict and, at the state's request, entered a nolle prosequi on the malice murder count. Significantly, the trial court did not conclude that the jury was deadlocked on the malice murder count. Because a nolle prosequi could not be entered without the defendant's consent once the case had been submitted to the jury, we held that the trial court erred in entering the nolle prosequi. Moreover, we concluded that the error "eliminat[ed] the jury's full consideration of voluntary manslaughter and a possible finding of provocation and passion with respect to the act which caused the killing," and we

---

[8] On the day that the jury began deliberations, the trial started in the morning with counsels' closing arguments and the trial court's charge, and both of those were completed before lunch, at which time jury deliberations began. It is unclear how long the jury deliberated before sending its note to the trial court about its verdict.

[9] After it continued deliberations after its first note to the court, the jury deliberated for the remainder of that day of the trial and then deliberated until 10:05 a.m. on the next day of trial.

[10] 275 Ga. 218, 219-220 (563 SE2d 868) (2002).

ruled, citing *Edge v. State*,[11] that the judgment had to be reversed.

In this case, tracking the latter language from *Marshall*, Byrd contends that, by accepting the partial verdict, the trial court improperly eliminated the jury's full consideration of involuntary manslaughter and a possible finding that the killing was done without intent but during an act of reckless conduct.[12]

We disagree with Byrd's contention. Unlike *Marshall*, in which the trial court did not permit the jury to continue deliberating after it indicated it had reached a partial verdict, the trial court in this case did not cut short the jury's deliberations on malice murder and involuntary manslaughter. Instead, after the jury indicated it had reached a partial verdict, the court permitted the jury to continue deliberations until the jury informed the court that it could not come to a "conclusion" on the malice murder count. At that point, the trial court concluded that the jury was deadlocked on that count.[13] Accordingly, the trial court did not improperly curtail the jury's consideration of malice murder and involuntary manslaughter.

Moreover, if we were to accept Byrd's contention on this point, it would mean that a trial court could not accept a partial verdict on certain counts when another count on which the jury deliberated extensively but could not reach a verdict includes a crime with a less culpable mental state than the counts on which the jury has reached a verdict. So long as the jury is permitted sufficient time to deliberate on the count on which it is deadlocked, we cannot conclude that it is error to accept a partial verdict on the counts on which the jury has reached a verdict.

This rule is illustrated by our recent decision in *Curles v. State*,[14] in which the jury, after some deliberations, informed the trial court that it had reached a verdict on the felony murder count against

---

[11] 261 Ga. 865 (2) (414 SE2d 463) (1992).

[12] The trial court charged the jury that a person commits involuntary manslaughter if, in the commission of an unlawful act other than a felony, he causes the death of another person. The unlawful act charged by the trial court was the misdemeanor of reckless conduct. If the jury had found Byrd guilty of involuntary manslaughter, that verdict would have been inconsistent with the verdict of guilty of felony murder (based on the underlying felony of aggravated assault), and Byrd's felony murder conviction would not have been able to stand. *Jackson v. State*, 276 Ga. 408, 410-413 (577 SE2d 570) (2003).

[13] Although the trial court did not use the word "deadlocked" to refer to the jury's impasse, the trial court effectively concluded that that was the case by stating that the jury had deliberated "plenty of time." In addition, the decision whether a jury is deadlocked is a "matter 'somewhat in the discretion' of the trial court," *Griffin v. State*, 264 Ga. 232, 233 (443 SE2d 612) (1994), quoting *Glass v. State*, 250 Ga. 736, 738 (300 SE2d 812) (1983), and " '(t)he decisive factor is not the length of deliberation but the inability of the jury to agree on a verdict.' " *Griffin*, 264 Ga. at 233, quoting *Phillips v. State*, 238 Ga. 632, 634 (235 SE2d 12) (1977). Under the circumstances of this case, we cannot conclude that the trial court abused its discretion in determining that the jury was deadlocked.

[14] 276 Ga. 237, 239-240 (575 SE2d 891) (2003).

Curles, but that it was deadlocked on the malice murder count. The trial court accepted the partial verdict on felony murder, gave the jury an *Allen* charge on the malice murder count, and the jury continued its deliberations. After several more hours, the jury informed the court that it remained deadlocked on malice murder, and the trial court granted a mistrial as to that count. Defense counsel objected to the mistrial. In this regard, the jury had been charged on voluntary manslaughter as a lesser included offense of malice murder, and defense counsel wanted the jury to continue deliberating in the hope that it would find Curles guilty of voluntary manslaughter.[15] On appeal, Curles contended that the trial court erred in granting the mistrial. We disagreed, concluding that because the jury had had lengthy deliberations on the malice murder count but had been unable to reach a verdict, the trial court had the discretion to declare a mistrial on the malice murder count and accept the partial verdict.

Similarly, in the present case, we conclude that the trial court had the discretion to accept the verdict on the counts on which the jury had reached unanimity and to dead docket the count on which the jury was deadlocked.

4. Byrd contends that the trial court erred in refusing to give his requested charge on self-defense. We conclude, however, that the trial court did not err.

This Court has stated that it is a rare case in which charges on both accident and justification will be supported by the evidence.[16] *Koritta v. State*[17] is the only case in which this Court has reversed a trial court for failing to charge on self-defense when the trial court has also charged on accident. In that case, the victim initially had control of a weapon, and Koritta testified that he struggled to gain control of the weapon because he feared for his safety and that of his children. During this struggle, Koritta gained control of the weapon. Koritta testified that the victim then verbally threatened him; that the victim came at Koritta; and that Koritta's body " 'jerked,' " causing the gun to fire, killing the victim. "When asked if the homicide was accidental or done in self-defense, [Koritta] responded, 'A little bit of both. I was defending myself; he come up and the gun went off. I didn't want to shoot nobody.' "[18] We thus concluded that there was "evidence to support a finding that the shooting was either accidental or justified," and that "it was for the jury, under proper instruction, to determine the truth from among the conflicting available infer-

---

[15] *Curles*, 276 Ga. at 240, n. 5.
[16] *Strong v. State*, 263 Ga. 587, 588 (436 SE2d 213) (1993). Accord *Kilpatrick v. State*, 252 Ga. App. 900, 903 (557 SE2d 460) (2001).
[17] 263 Ga. 703 (438 SE2d 68) (1994).
[18] *Koritta*, 263 Ga. at 704.

ences."[19]

In the present case, there are no conflicting available inferences that the assault that resulted in the killing was either justified or accidental.[20] Conflicting inferences were present in *Koritta* because of the nature of the struggle over the weapon and because of the ambiguous testimony of Koritta regarding whether the shooting was accidental or justified. Significantly, in *Koritta*, we specifically held that an inference that the victim was intentionally killed in an act of self-defense was available from the evidence presented.[21] Here, on the other hand, no such inference is available. According to Byrd, when he shot Moton, he was merely turning to see if anyone was behind him, and his arm accidentally hit the open door of the car, causing the gun to accidentally discharge. Thus, although Byrd's testimony may raise an inference that he initially drew his weapon to defend himself against the young men that he testified were approaching Moton and himself, no inference can be drawn that Byrd acted in self-defense in actually firing the shot that killed Moton and that formed the basis of the malice murder, felony murder, and aggravated assault charges. Accordingly, unlike *Koritta*, this is not one of those "rare" cases in which the defendant was entitled to a charge on accident and self-defense.

For these reasons, the trial court did not err in refusing to charge on self-defense.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 2, 2004.

*Sharon L. Hopkins*, for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Marc A. Mallon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.

---

[19] Id. at 705.

[20] The indictment charged that Byrd had committed the offense of malice murder by causing Moton's death by shooting him with a pistol; had committed the offense of felony murder by causing Moton's death during an aggravated assault by shooting him with a pistol; and had committed the offense of aggravated assault by shooting Moton with a pistol. Thus, one assault – the shooting of Moton with a pistol – formed the basis for all three charges.

[21] Id. at 705.