S11A1020. JACKSON v. THE STATE.
(716 SE2d 188)

CARLEY, Presiding Justice.

After a jury trial, Appellant Quincy Marcel Jackson was found guilty of three counts of burglary, two counts of false imprisonment,

two counts of kidnapping with bodily injury, two counts of armed robbery, one count of kidnapping, three counts of aggravated assault, and the malice murder of Tedla Lemma. The trial court entered judgments of conviction on those guilty verdicts and sentenced Appellant, in the aggregate, to life imprisonment plus 30 years. A motion for new trial was denied, and he appeals.*

Construed most strongly in support of the verdicts, the evidence shows that on November 7, 2007, Lorna Araya drove Appellant and Ramone Ferguson to the house where the brothers Sirak and Tedla Lemma lived. Tedla Lemma was partially paralyzed due to being shot in the head during a robbery that had occurred many years ago. Appellant and Ferguson, armed with guns and silver duct tape, entered the house through the garage. Appellant hit Sirak Lemma in the head with his gun, instructed him to lie on the ground, tied his hands with duct tape, and took his cell phone, car key, and $4,000 in cash from his pockets. Appellant and Ferguson then forced Tedla Lemma to lie down, and they tied his hands with duct tape and stole his wallet. After the intruders asked for his safe, Sirak Lemma led them to his bedroom and unlocked the safe, from which the men stole $50,000. The men shoved Sirak Lemma into a closet and then left. After hearing the men leave, Sirak Lemma ran downstairs to attend to his brother and to call the police. When Appellant and Ferguson left the house with the $50,000 in cash, they entered the getaway car driven by Ms. Araya. The group returned to Ms. Araya's house and split the money between them.

The second crime occurred on December 27, 2007 when Sunram Mahabal awoke to banging on his front door. He went downstairs and saw two men wearing reflective vests who he believed were police. However, the two men were Appellant and Marshae Brooks, who pulled a gun on Mr. Mahabal. Ms. Araya and Ferguson were waiting in the getaway car on the street. After an initial struggle, the men tied Mr. Mahabal's hands and feet and put a hood over his head. The men demanded money, jewelry, and the location of the safe.

Ms. Mahabal awoke when she heard her husband's screams and the sound of a gunshot from the garage. Appellant appeared outside of her bedroom holding a handgun. He grabbed her arm and took her upstairs to her son's room, where he tied up both of them. Ferguson

---

* The crimes occurred on November 7, 2007, December 26, 2007, and March 25, 2008, and the grand jury returned an indictment on September 24, 2008. The jury found Appellant guilty on April 28, 2009, and the trial court entered the judgments of conviction and sentences on April 29, 2009. The motion for new trial was filed on May 7, 2009, amended on November 9, 2010, and denied on November 16, 2010. Appellant filed the notice of appeal on November 30, 2010. The case was docketed in this Court for the April 2011 term and submitted for decision on the briefs.

remained with the son while Appellant and Brooks drove Mr. and Ms. Mahabal to their jewelry store in their car. As they were driving there, Ms. Mahabal noticed that they were following a small, red Pontiac Grand Am driven by Ms. Araya. She memorized the license plate number. Upon arriving at the store, Ms. Araya drove away, and Mr. Mahabal was left in the car while Ms. Mahabal led the others into the store where she informed them that she could not open the safe without her husband. As Mr. Mahabal was being escorted toward the store, he jerked sharply and fled the scene. While the intruders went after Mr. Mahabal, Ms. Mahabal called 911 from the store phone.

Ms. Araya then received a call on her cell phone from Appellant telling her that the heist went awry and that they were running. She picked up Ferguson from the Mahabal residence, and Appellant and Brooks took the MARTA train into town. During the course of their investigation, police obtained cell phone numbers from a cell tower "dump" from the tower nearest to the residences of the home invasions and the jewelry store. Both Appellant's and Ms. Araya's numbers were found.

The third crime occurred on March 25, 2008 when Appellant, Ms. Araya, and Brooks went again to the Lemma brothers' house. While Ms. Araya waited in the car, Appellant and Brooks broke into the home and discovered Tedla Lemma inside. After tying him up and putting something over his head, Appellant and Brooks brought several stolen items out to the waiting car.

After repeatedly trying, to no avail, to contact his brother at their residence, Sirak Lemma called 911 from his store. He then returned home and found the police already there, and he was informed that Tedla Lemma had been discovered dead lying face down next to the bed and hogtied with several neckties and a telephone cord. A diaper covered his face and mouth and was held in place by a necktie secured around his head. The medical examiner concluded that the victim died as a result of smothering and there was evidence of blunt force trauma of the head, neck, and chest. Several items also were discovered missing, including two flat-screen televisions, several laptops, and jewelry.

In his sole enumeration of error, Appellant contends that the evidence introduced at trial was insufficient to support his convictions. Specifically, he submits that his convictions must be reversed because they were based on the uncorroborated testimony of his accomplice Ms. Araya and thus were in violation of OCGA § 24-4-8, which requires corroborating circumstances in "felony cases where the only witness is an accomplice."

> "The rule is well established that, to sustain a conviction in a felony case upon the testimony of an accomplice, there

must be corroborating facts or circumstances, which, in themselves and independently of the testimony of the accomplice, directly connect the defendant with the crime, or lead to the inference that (he) is guilty, and more than sufficient to merely cast on the defendant a grave suspicion of guilt. . . ." [Cits.]

*Baines v. State*, 276 Ga. 117, 119 (1) (575 SE2d 495) (2003).

During the criminal incident on November 7, 2007, it was established that Tedla Lemma's wallet was stolen by the intruders. Sirak Lemma, who was not an accomplice, told the jury that the intruders took his brother's wallet. When executing a search warrant at Appellant's home, the police found Tedla Lemma's stolen wallet containing his driver's license and credit cards in the room believed to be Appellant's bedroom. Also, Ms. Araya testified that Appellant brought a big, silver gun to the November 7, 2007 incident. Sirak Lemma also testified that one of the invaders had a pistol with a long silver "arm" on it. A silver gun matching the descriptions independently given by Ms. Araya and Sirak Lemma was found during the execution of the search warrant of Appellant's house. Appellant later admitted to the police that he owned this gun. Finally, cell phone tower records established that Appellant and Ms. Araya were exchanging phone calls during the times when the criminal incidents occurred and within the vicinity of both residences and the jewelry store involved in the incidents.

Appellant contends that the discovery of the wallet at his home is not sufficient corroborating evidence because he has several roommates, one of whom may have brought the wallet into the house. He claims that the cell phone records are also not sufficient corroborating evidence as they only establish where his cell phone was at the time of the crimes, and not where he was, since he may have let a friend borrow his phone. However,

[t]he additional [corroborating] evidence " 'may be circumstantial and it may be slight,' " [cit.], and it " 'need not of itself be sufficient to warrant a conviction of the crime charged,' " [cit.]. It must, however, be independent of the accomplice testimony and must "directly connect the defendant with the crime, or lead to the inference that (he) is guilty." [Cit.]

*Johnson v. State*, 288 Ga. 803, 805 (2) (708 SE2d 331) (2011). Although the evidence regarding the discovery of the wallet and the cell phone records may be circumstantial, it is independent of the testimony of Ms. Araya and directly connects Appellant to the

crimes. Therefore, there was sufficient evidence to corroborate Ms. Araya's testimony directly identifying Appellant as one of the intruders, and thus the requirement in OCGA § 24-4-8 was satisfied. Consequently, when viewed in the light most favorable to the verdict, the evidence was sufficient to authorize a rational trier of fact to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Johnson v. State*, supra at 804 (1), 805 (2); *Judkins v. State*, 282 Ga. 580, 582 (1) (652 SE2d 537) (2007); *Simpson v. State*, 278 Ga. 336, 337 (1) (602 SE2d 617) (2004); *Baines v. State*, supra; *Wilson v. State*, 306 Ga. App. 827, 829-830 (1) (703 SE2d 400) (2010).

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2011.

*Sharon L. Hopkins*, for appellant.
*Daniel J. Porter, District Attorney, Christa L. Kirk, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General,* for appellee.