A11A2323, A11A2324. WHITE v. THE STATE (two cases).
(726 SE2d 548)

PHIPPS, Presiding Judge.

After a joint jury trial, Lloyd White and his sister Capucine White were convicted of armed robbery. In Case No. A11A2323, Lloyd White contends that the trial court erred by admitting evidence and by making certain remarks in the jury's presence. In Case No. A11A2324, Capucine White challenges the admission of evidence, the sufficiency of the evidence, and the denial of her motion to sever her trial. Because neither appellant has demonstrated reversible error, their convictions are affirmed.

The state's evidence showed that around midnight on September 25, 2007, a masked gunman and two unmasked women — all dressed in black clothing — broke into an apartment and demanded money from the occupants. The occupants complied with the intruders' demands, and within five minutes after bursting through the door, the three intruders fled the apartment with money and a money order that belonged to the occupants.

During the heist, one of the apartment occupants had heard the gunman refer to one of his cohorts as "Davisha"; two of the occupants had recognized one of the intruders as an individual named "Davisha"; and one of those two knew further where Davisha worked and thus reported Davisha's identification and participation in the heist to police.

Within weeks of the robbery, police had arrested and interviewed the person named Davisha. Although Davisha gave varying accounts

of the evening in question, in one account she identified Lloyd White as the masked gunman, and she stated that Capucine White had traveled to the apartment with them, but had waited outside. Davisha was thereafter co-indicted for armed robbery with Lloyd White and Capucine White, but entered a guilty plea to a reduced charge of robbery. As part of her plea deal, as she would later recount at trial, Davisha agreed to appear at her co-indictees' joint trial as a state's witness and "[t]o testify truthfully."

Davisha's trial testimony continued as follows. At the time of the underlying criminal incident, Capucine White was her girlfriend, and Lloyd White was her close friend. Earlier on the night in question, at the townhouse in which she (Davisha) lived, she, Lloyd White, Capucine White, and two other individuals plotted to go to a specific apartment and rob the occupants. The five discussed wearing black clothing and using a handgun. Accordingly, the five of them then rode to the identified apartment. And while Capucine White and another individual stayed in the car, she, Lloyd White (as the masked gunman) and a third person went inside. After robbing the occupants at gunpoint, the five of them returned to her (Davisha's) townhouse.

The state also presented as a trial witness Davisha's younger sister, who was 15 years old at the time of the trial. At the time of the criminal incident, she was 13 years old and living in the same residence as Davisha. The sister had been interviewed by police shortly after Davisha was interviewed. And at trial, Davisha's younger sister gave testimony that, consistent with Davisha's trial testimony, implicated Lloyd White and Capucine White in committing armed robbery at the apartment.

In particular, Davisha's younger sister testified that on the night in question, she was at their townhouse, along with Davisha, Lloyd White, Capucine White, and two others. At about 9:30 p.m., those five individuals discussed money, planned a robbery, and designated an apartment. The five thereafter left the townhouse in a car together; they were wearing black clothing; and Lloyd was carrying a face mask and a handgun. At about midnight, the five returned together to the townhouse, and money was divided amongst three of the five: Lloyd White, Capucine White, and another individual. Davisha, however, had not taken any of the money being divided.

As a similar transaction to show Lloyd White's bent of mind and course of conduct, the state presented evidence that, in September 2006, Lloyd White was one of two individuals, both dressed in black clothing, who snatched a woman's purse out of a shopping buggy the woman was pushing in a store. The two individuals ran out of the store. Within about ten minutes, police had apprehended a fleeing suspect, Lloyd White, whom the shopper identified at the scene as one

of the two individuals who had accosted her.

Neither Capucine White nor Lloyd White testified. Capucine White presented no witnesses; Lloyd White called two. His mother testified that, from about 7:00 until 9:00 on the night in question, she and Lloyd White were at a Bible study class. And a former co-worker of Lloyd White testified that, at about 10:00 on the night in question, Lloyd White briefly stopped by their place of employment. Neither of Lloyd White's witnesses, however, accounted for his whereabouts thereafter.

## Case No. A11A2323

1. Lloyd White contends that the trial court erred by allowing Davisha to testify, asserting, "It was well known to all parties, including the court itself, that Davisha . . . had credibility problems." Lloyd White points out that, during Davisha's guilty plea hearing held before the same trial judge about six months prior to his trial, both the judge and prosecuting attorney expressed concern that portions of Davisha's account appeared untruthful and crafted to protect Capucine White. Moreover, Lloyd White points out that at his trial, Davisha testified that she had given false accounts about the night of the robbery — during her guilty plea proceeding *and* during her police interviews. He argues that the trial court therefore allowed the state to knowingly use false testimony to convict him, and his conviction should be reversed because his constitutional rights were violated.

Lloyd White cites *Cammon v. State*[1] for the principle: "Conviction of a crime following a trial in which perjured testimony on a material point is knowingly used by the prosecution is an infringement of the accused's Fifth and Fourteenth Amendment rights to due process of law."[2] That principle, however, does not provide for a reversal in this case. Lloyd White has not shown that the prosecution knowingly used perjured testimony on a material point. While he has shown that Davisha gave inconsistent accounts of the night in question, as *Cammon* further recognized, "[t]here is no constitutional require-ment that the witnesses upon whom the State relies to prove its case must give consistent evidence."[3] The fact that a witness's trial testimony and that witness's prior account(s) "may have been incon-sistent does not render her incompetent to testify, but goes to her

---

[1] 269 Ga. 470 (500 SE2d 329) (1998).
[2] Id. at 471 (2) (citation and punctuation omitted).
[3] Id.

credibility as a witness."[4]

At trial, Davisha acknowledged that she had previously given varying accounts of that evening, testifying that the prior accounts had been false so as to protect Capucine White and Lloyd White. In particular, she acknowledged the following with respect to her police interviews. First, she said in a police interview that two strangers had approached her in the apartment parking lot and asked her to knock on the apartment door so that they (the strangers) could go inside the apartment to rob the occupants. Next, she said during a police interview that she and two of her friends went inside the apartment — but that neither friend was Lloyd White. Also, during a police interview, she said that she, Lloyd White, and another woman had gone to the apartment and robbed the occupants. At trial, Davisha acknowledged the following with respect to her plea hearing. She testified that, during that hearing, she had told the truth "somewhat." Although she had said that Capucine White had been one of the five who traveled to the apartment parking lot and that she (Davisha), Lloyd White, and a third person had gone into the apartment to rob the occupants, she had stated, untruthfully, that Capucine White had not participated in their prior planning to rob the apartment occupants.

Hence, the jury had the benefit of Davisha's trial testimony and her prior inconsistent accounts. And the jury was aptly instructed to decide for itself which version, if any, was the truth, and which ones were fabrications.[5] Given these circumstances,

> [t]he applicable constitutional guarantee is the Sixth Amendment right to a trial before an impartial jury for a determination of the credibility of the State's case and defendant's defense. Here, the convictions are not based upon the State's knowing use of perjured testimony, but upon that version of the events most unfavorable to [Lloyd White], which version the jury accepted after hearing all the evidence and resolving the credibility of all of the witnesses.[6]

---

[4] *Hayes v. State*, 152 Ga. App. 858 (2) (264 SE2d 307) (1980).

[5] See *Griffin v. State*, 262 Ga. App. 87, 88 (1) (585 SE2d 145) (2003) (even though a witness may recant on the stand, her prior inconsistent statements constitute substantive evidence on which the jury may rely).

[6] *Cammon*, supra; see *Harrison v. State*, 257 Ga. 528, 529-530 (1) (361 SE2d 149) (1987) (rejecting claim that state obtained death sentence by use of perjured testimony, where, inter alia, prosecutor had reason to believe that witness's prior testimony was true, jury had benefit of witness's present testimony and previous inconsistent testimony, and jury was properly given opportunity to decide which version was the truth); *Ward v. State*, 205 Ga. App. 504, 507

Lloyd White has thus failed to show that the trial court erred by allowing Davisha to testify.[7]

2. Lloyd White contends that the trial judge violated OCGA § 17-8-57, which provides in pertinent part, "It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused."[8]

Lloyd White claims that a violation occurred when Capucine White's attorney was cross-examining Davisha about whether even her trial account was false in an attempt to curry favor with the state. The attorney asked:

Q: And you know that one way to get a light sentence here is to help — .
A: Tell the — .

The prosecutor interrupted Davisha's answer with an objection that defense counsel was "mischaracterizing the deal with [Davisha]. . . . It's that she testify truthfully." The trial court remarked to defense counsel, "She's supposed to tell the truth, not to help — she's not — she's just supposed to tell the truth. You want to characterize it in a different way." The lawyer thus resumed the inquiry:

Q: Do you want to help the prosecution?
A: Tell the truth, yes.

On appeal, Lloyd White complains that the trial court's remarks violated OCGA § 17-8-57 because they "appeared both to endorse the State's characterization of its agreement with the witness and to bolster her credibility." Unquestionably, "we strongly discourage the giving of direction or the use of language that could create the appearance of alignment between the trial court and either the

---

(3) (423 SE2d 288) (1992) (witness's prior inconsistent statements related to witness's credibility, but did not require suppression of witness's testimony because it was not proved that witness's trial testimony was false, and witness's credibility was properly left to jury under proper instructions from court).

[7] *Cammon,* supra; *Harrison,* supra; *Ward,* supra; see also *Hayes,* supra (trial court's determination of witness competency will not be disturbed on appeal in the absence of an abuse of discretion).

[8] See *Patel v. State,* 282 Ga. 412, 413 (2), n. 2 (651 SE2d 55) (2007) ("any alleged violation of OCGA § 17-8-57 must be reviewed in accordance with the 'plain error' rule") (citation and punctuation omitted); see further *Ledford v. State,* 289 Ga. 70, 85 (14) (709 SE2d 239) (2011) (a violation of OCGA § 17-8-57 constitutes "plain error," and "on appeal, the issue is simply whether there was such a violation") (citation and punctuation omitted).

prosecution or defense."[9] But we disagree with Lloyd White that the cited remarks violated OCGA § 17-8-57. The complained-of remarks did not "express or intimate [the trial judge's] opinion as to what has or has not been proved or as to the guilt of the accused";[10] rather, when considered in context, they amounted to a proper exercise of the trial court's duty to manage the trial proceedings.[11]

3. Lloyd White contends that the trial court erred by allowing the jury to hear an audiorecording, admitted as State's Exhibit 25, that contained the police interview of Davisha's younger sister. The trial court overruled defense objections, accepting the state's claim that the recording was admissible to show that the sister had made both prior inconsistent statements and prior consistent statements. Lloyd White argues on appeal that playing the recording was error because the state failed to provide an appropriate foundation for any statement thereon to be considered as either a prior inconsistent statement or a prior consistent statement.

(a) With regard to the requisite foundation for prior inconsistent statements, Lloyd White points out that our Supreme Court has set forth three foundational requirements:

> First, the prior statement must contradict or be inconsistent with the witness's in-court testimony; second, the prior statement must be relevant to the case; and, third, the examining attorney must lay the proper foundation with the witness. The purpose of the foundation requirement is to give the witness an opportunity to admit, explain, or deny the prior contradictory statement.[12]

---

[9] *State v. Gardner*, 286 Ga. 633, 635 (690 SE2d 164) (2010).

[10] OCGA § 17-8-57.

[11] See *Ledford,* supra (statement was not an improper comment, but a proper exercise of the trial court's duty to manage the trial proceedings and to ensure the well-being of jury); *Walker v. State*, 282 Ga. 774, 777 (4) (653 SE2d 439) (2007) (comments made in the course of ruling on objections are generally not the type of comments prohibited by OCGA § 17-8-57), disapproved on other grounds, *Ledford,* supra; *Appling v. State*, 281 Ga. 590, 592 (4) (642 SE2d 37) (2007) (mere explanation of trial court's ruling upon an objection did not constitute the type of judicial comment prohibited by OCGA § 17-8-57); *Whitner v. State*, 276 Ga. 742, 744-745 (3) (584 SE2d 247) (2003) (comments made in an "attempt to regulate the proceedings" generally are not impermissible comments on the evidence) (cited by *Ledford,* supra), disapproved on other grounds, *Ledford,* supra; *Hufstetler v. State*, 274 Ga. 343, 345 (2) (553 SE2d 801) (2001) ("Under these circumstances, no reasonable juror would have interpreted the trial court's remark as the expression of an opinion on any issue to be decided in the case.").

[12] *Duckworth v. State*, 268 Ga. 566, 567 (1) (492 SE2d 201) (1997) (footnotes omitted; emphasis supplied).

Lloyd White complains that the third requirement was not met, pointing out that the recording was played *after* Davisha's younger sister testified and *after* she was released from subpoena.

It is axiomatic, however, that "[h]arm as well as error must be shown to authorize a reversal by this court."[13] "[Lloyd White] has failed to satisfy his burden to show harmful error affirmatively by the record."[14] He has neither cited any statement, nor shown the extent to which any prior statement presented to the jury was inconsistent with any aspect of Davisha's younger sister's trial testimony. While the recording of the entire interview was made a part of the appellate record, Lloyd White acknowledges that the recording of "[Davisha's younger sister's] interview, State's Exhibit 25, was not played for the jury in its entirety." What is more, the appellate record contains no transcription of whatever portion *was* played for the jury. "[W]here the transcript does not fully disclose what transpired in the trial court, the burden is on the complaining party to have the record completed pursuant to OCGA § 5-6-41."[15] Lloyd White has failed to do so;[16] consequently, with regard to what the jury heard, there is "nothing to review."[17] We will not speculate whether, and to what extent, the jury heard any prior inconsistent statement(s) so prejudicial that Lloyd White's conviction must be reversed.[18] "Where the appellants have failed to *show* harm or prejudice, we find no reversible error."[19]

(b) Lloyd White contends also that the state failed to establish the requisite foundation for introducing a prior consistent statement,[20] and that therefore, the trial court erred by allowing the jury to hear the recording on the ground that it contained prior consistent

---

[13] *Robinson v. State*, 229 Ga. 14, 15 (1) (189 SE2d 53) (1972) (citation and punctuation omitted); *O'Neal v. State*, 237 Ga. App. 51, 54 (2) (513 SE2d 50) (1999).

[14] *Smith v. State*, 266 Ga. 827, 829 (3) (470 SE2d 674) (1996).

[15] *Glass v. State*, 289 Ga. 542, 545 (2) (712 SE2d 851) (2011) (citations omitted) (when a portion of the transcript is lost or destroyed, OCGA § 5-6-41 allows parties to re-create the transcript from memory and allows for the trial court to do so when the parties cannot agree).

[16] This case was docketed in this court on August 10, 2011.

[17] *Glass*, supra (citations and punctuation omitted); see *Crawford v. State*, 288 Ga. 425, 426-427 (2) (a) (704 SE2d 772) (2011).

[18] See *Westmoreland v. State*, 287 Ga. 688, 696-697 (10) (699 SE2d 13) (2010) (appellant failed to show reversible error affirmatively by the record, where appellant contended that trial court erred in admitting photographs, but appellant failed to identify to the appellate court which of the hundreds of photographs admitted were allegedly objectionable ones so as to allow the appellate court to isolate them for review of appellant's claim; court was without information as to the content of the allegedly objectionable photographs; it is not appellate court's job to cull the record on behalf of a party).

[19] *Marshall v. State*, 239 Ga. 101, 103 (2) (236 SE2d 58) (1977) (emphasis supplied).

[20] *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009) (concerning admissibility of a prior consistent statement).

statements. Lloyd White asserts that any prior consistent statement impermissibly bolstered the credibility of the witness.

Again, Lloyd White has demonstrated no reversible error. He has not cited this court to any statement; nor has he shown the extent to which any prior statement presented to the jury was consistent with any aspect of Davisha's younger sister's trial testimony and thereby impermissibly bolstered it. Under the analysis set forth in Division 3 (a),[21] we will not speculate whether, and to what extent, the jury heard any prior consistent statement(s) so prejudicial that reversal of Lloyd White's conviction is warranted.[22]

### Case No. A11A2324

4. Capucine White also contests the admissibility of State's Exhibit 25, the audiorecording containing Davisha's younger sister's police interview; she asserts the same foundational arguments as Lloyd White.[23]

Capucine White also acknowledges that the recording of "[Davisha's younger sister's] interview, State's Exhibit 25, was not played for the jury in its entirety." Yet, she has not cited any statement, nor shown the extent to which any prior statement presented to the jury, was prejudicial. As stated above, the appellate record of the joint trial contains no transcription of what was played for the jury. And Capucine White did not compile a record demonstrating what transpired in the trial court with regard to this alleged error;[24] consequently, there is "nothing to review."[25] We will not speculate whether, and to what extent, the jury heard any prior statement(s) so prejudicial that reversal of Capucine White's conviction is warranted.[26]

5. Capucine White contends that the trial court erred by allowing Davisha to testify, asserting the same arguments as Lloyd White.[27] Under the analysis set forth above, no such error has been shown.[28]

6. Capucine White challenges the sufficiency of the evidence to support her armed robbery conviction on the ground that it rested solely on the testimony of an accomplice, Davisha, in violation of

---

[21] Supra.

[22] See *Westmoreland*, supra.

[23] See Division 3, supra.

[24] See OCGA § 5-6-41; *Glass*, supra; *Crawford*, supra. This case was docketed in this court on August 10, 2011.

[25] *Glass*, supra (citations and punctuation omitted); see *Crawford*, supra.

[26] See *Westmoreland*, supra.

[27] See Division 1, supra.

[28] See Division 1, supra.

OCGA § 24-4-8.[29] In light of Davisha's younger sister's testimony — concerning Capucine White's participation with others in planning a robbery at a certain apartment, preparing for the robbery, leaving and returning with the others, then receiving a share of money being divided, there is no merit in this contention.[30]

7. Capucine White contends that the trial court erred by not granting her motion to sever her trial from that of her co-defendant. She claims that her armed robbery conviction was a result of the prejudicial spillover effect of evidence against her co-defendant, citing the similar transaction evidence admitted only against the co-defendant and evidence that only the co-defendant was holding a gun during the robbery.

The following three factors must be considered by a trial court when exercising its discretion in regard to a motion to sever in a case in which the death penalty is not sought:

> (1) Will the number of defendants create confusion as to the law and evidence applicable to each? (2) Is there a danger that admissible evidence against one defendant will be considered against the other despite the court's instructions? (3) Are the defenses antagonistic to each other or to each other's rights?[31]

In this case, there was no showing that any confusion was engendered by the number of defendants or by the applicable law. The record reflects that the trial court properly instructed the jury that the similar transaction evidence could be "considered for the limited purpose of showing, if it does, the bent of mind and course of conduct of a defendant. . . . [T]his evidence is offered as to Lloyd White and not Capucine White. Such evidence, if any, may not be considered by you for any other purpose." The trial court provided ample instructions on principles of parties to a crime. The defenses of Capucine White and her brother have not been shown as antagonistic; "neither attempted

---

[29] "[In] felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient."

[30] See *Jackson v. State*, 289 Ga. 798, 800-802 (716 SE2d 188) (2011); *Teasley v. State*, 288 Ga. 468, 469 (704 SE2d 800) (2010) (mere presence at the crime scene is insufficient to show participation in the crime; however, a person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it; whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed).

[31] *Williams v. State*, 280 Ga. 584, 587 (3) (630 SE2d 370) (2006) (punctuation and footnote omitted).

to point the blame at the other. They simply argued that the prosecution had failed to meet its burden of proof."[32] And although Capucine White asserts that the joint trial harmed her because the evidence against her brother was stronger than the evidence against her, "it is not enough for the defendant to show that [s]he would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger. The defendant must show clearly that a joint trial prejudiced [her] defense, resulting in a denial of due process."[33] Capucine White has made no such showing. Accordingly, she has not demonstrated that the trial court abused its discretion in denying her motion for a separate trial.[34]

*Judgments affirmed. Andrews, J., concurs. McFadden, J., concurs fully and specially.*

McFADDEN, Judge, concurring fully and specially.

I concur fully in the majority opinion. I write separately to point out the General Assembly's direction that, "It shall be the court reporter's duty . . . when directed by the judge, to record exactly and truly or take stenographic notes of the testimony *and proceedings* in the case tried, except the arguments of counsel." OCGA § 15-14-1 (emphasis supplied). Of course there may be a variety of ways to discharge that duty. See *Robertson v. State*, 268 Ga. 772, 778 (15) (493 SE2d 697) (1997); *State v. Knowles*, 247 Ga. 218 (274 SE2d 468) (1981). And the parties have a related responsibility to preserve error. But the playback of recorded material during a trial constitutes a part of the "proceedings in the case." Consequently a court reporter's statutory duty to create a transcript which, in conjunction with the rest of the record, is "complete and accurate enough to afford a full and fair review by the [appellate courts]" extends to the playback of recorded material. See *Knowles*, supra.

DECIDED MARCH 21, 2012.

*Stephen R. Scarborough*, for appellant (case no. A11A2323).
*Raina J. Nadler*, for appellant (case no. A11A2324).
*Patrick H. Head, District Attorney, Anna G. Cross, Assistant District Attorney*, for appellee.

---

[32] *Moon v. State*, 288 Ga. 508, 510 (2) (705 SE2d 649) (2011).
[33] *Herbert v. State*, 288 Ga. 843, 845 (2) (708 SE2d 260) (2011) (citations omitted).
[34] See *Moon*, supra; *Herbert*, supra; *Williams*, supra at 587-588 (3).