## A07A0016. DIXON v. THE STATE.
(645 SE2d 692)

PHIPPS, Judge.

After a jury trial, Christian Dixon was convicted of obstructing or hindering a law enforcement officer by spitting on the officer's face. On appeal, he contends that the trial court erred by denying his motion for a directed verdict of acquittal, by failing to grant a mistrial when a state's witness placed his character in issue, and by rejecting his claim of ineffective assistance of counsel. Dixon has shown no reversible error, and we affirm.

1. Dixon contends that the trial court erred by denying his motion for a directed verdict of acquittal. We disagree.

Viewed in a light to uphold the verdict, as we are bound to do,[1] the state's evidence showed the following. On September 21, 2002, Deputy Sheriff Dale Crocker of the Richmond County Sheriff's Department drove to the location of a reported fight, finding Dixon getting off the ground and arguing with another man. Crocker interviewed Dixon and determined Dixon was intoxicated. Crocker next began interviewing the other man. Dixon persisted in interrupting that interview, despite Crocker's repeated orders that he not do so and that he step aside. When Dixon retorted an obscene remark, Crocker arrested Dixon for disorderly conduct. Dixon became argumentative, using profanity and threats to the officer.

While in the back seat of the patrol car en route to the Richmond County jail, Dixon screamed, beat his head against the plexiglass divider between the front and back seats, and threatened Crocker. Crocker called the jail to alert officers there that he would soon arrive with a belligerent, combative arrestee and would need assistance. About five or six uniformed deputy sheriffs met Crocker upon his arrival with Dixon.

---

[1] *Everritt v. State*, 277 Ga. 457 (588 SE2d 691) (2003).

Although Dixon was verbally and physically combative, the several officers safely escorted him to the sally port. There, Dixon strongly resisted the officers' attempts to pat him down and continually threatened them. He began banging his head against the wall, spitting blood on the wall, and then licking it off. Because Dixon disobeyed the officers' commands to cease his conduct, deputy jailer Christopher Epps was instructed by a supervisor to place him in a restraining chair for everyone's safety. While Epps and two other officers were attempting to secure Dixon in the chair, Dixon continued to thrash about and eventually spat blood and saliva onto Epps's face.

Contending on appeal that the trial court erred by denying his motion for a directed verdict of acquittal, Dixon cites his testimony that he did not spit on Epps and points out that the state produced only two witnesses who testified otherwise.

Generally, a fact can be established by the testimony of a single witness.[2] Witness credibility is a matter for the jury.[3] An appellate court neither determines witness credibility nor weighs the evidence.[4]

> The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find [Dixon] guilty beyond a reasonable doubt of the crime[ ] of which he was convicted. Since an appellate court reviewing a trial court's denial of a motion for directed verdict applies the "sufficiency of the evidence" test of *Jackson v. Virginia*, . . . we . . . affirm the trial court's denial of [Dixon's] motion for directed verdict of acquittal.[5]

2. Dixon contends that the trial court erred by failing to grant a mistrial, asserting that a state's witness impermissibly put his character in issue.

(a) Dixon complains that Crocker revealed the circumstances that led to his transport to jail, asserting that this background was not relevant to the offense of which he was convicted — obstructing

---

[2] *Panzner v. State*, 273 Ga. App. 868 (616 SE2d 201) (2005).

[3] *Price v. State*, 280 Ga. 193, 195 (2) (625 SE2d 397) (2006).

[4] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[5] *Pye v. State*, 274 Ga. 839, 840 (2) (561 SE2d 109) (2002), citing *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see OCGA § 16-10-24; *Gordon v. State*, 199 Ga. App. 704, 705 (2) (406 SE2d 110) (1991).

or hindering a law enforcement officer. But Dixon did not object or move for a mistrial on this basis; therefore, he waived this complaint.[6]

(b) Dixon complains that Crocker impermissibly placed his character in issue by revealing to the jury that he had previously been in prison.

The record shows that Crocker was asked by the prosecutor to describe the threats Dixon had issued to him. Crocker recounted that Dixon had warned him that he had been in prison previously, at which point Dixon's trial counsel interjected, "I'm going to object, Judge, and I'm going to ask for a mistrial." During the hearing on the motion outside the presence of the jury, the court denied Dixon's motion for a mistrial. Upon the jurors' return to the courtroom, the court instructed them to disregard "any comment or testimony you've heard concerning about [Dixon's] past." Because Dixon thereafter neither objected to those instructions nor renewed his motion for mistrial, this issue was not preserved for appellate review.[7]

3. Dixon contends that the trial court erred by rejecting his claim that he received ineffective assistance of counsel. To prevail on an ineffectiveness claim, a defendant must establish, pursuant to *Strickland v. Washington*,[8] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[9] A court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.[10] Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.[11]

Dixon asserts that his trial counsel's performance was deficient because he requested a mistrial, discussed in Division 2 (b) above, in the presence of the jury. Dixon asserts that his defense was prejudiced because the continuation of his trial thereafter signaled to the jury that the complained-of conduct was acceptable.

When Dixon's trial counsel made the statement, "I'm going to object, Judge, and I'm going to ask for a mistrial," the jury was excused from the courtroom and did not return until after the motion was overruled. The jury was then given a curative instruction, which would have been given even if the motion had not been made until after the jury left the courtroom. In view of the court's curative

---

[6] See generally *Whitner v. State*, 276 Ga. 742, 744 (3) (584 SE2d 247) (2003); *Jones v. State*, 280 Ga. App. 287, 291 (3) (633 SE2d 806) (2006).

[7] *Grant v. State*, 278 Ga. 536, 537 (2) (604 SE2d 515) (2004).

[8] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[9] *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

[10] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

[11] Id.

instruction and the evidence against Dixon, no reasonable probability exists that the outcome of his case would have been different had counsel requested that the jury be excused before he moved for a mistrial.[12]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MAY 2, 2007.

*Brendan N. Fleming*, for appellant.
*Daniel J. Craig, District Attorney*, for appellee.

[12] See *Pittman v. State*, 243 Ga. App. 564, 565-566 (2) (a) (533 SE2d 769) (2000).