**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 12, 2012

# In the Court of Appeals of Georgia

A12A1565. SMITH v. THE STATE.

ELLINGTON, Chief Judge.

A Spalding County jury found Ebony Smith guilty of trafficking in cocaine, OCGA § 16-13-31 (a) (1) (C). She appeals from the denial of her motion for new trial, contending that the evidence was insufficient to support her conviction and that she received ineffective assistance of counsel. Finding no error, we affirm.

1. In four related enumerated errors, Smith argues that the trial court erred in denying her motion for a directed verdict and that the evidence was insufficient to support her convictions. According to Smith, the evidence showed that she was merely present in the car where the cocaine was discovered, that she did not know that the cocaine was hidden in the car's trunk, and that others had had access to the car before she and her co-defendant, Dante Hampton, took possession of it.

A motion for a directed verdict should be granted only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction: the evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The evidence must be viewed in the light most favorable to support the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.

(Footnotes omitted.) *Hughes v. State*, 297 Ga. App. 217 (676 SE2d 852) (2009). See also *Bray v. State*, 294 Ga. App. 562, 563 (1) (669 SE2d 509) (2008) ("A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it.") (citation and punctuation omitted).

Viewed in this light, the evidence shows that, at about 9:30 p.m. on May 30, 2007, an officer with the Spalding County Sheriff's Department was patrolling the southbound lanes on Interstate 75 when he observed a car that was being driven with about one third of its width in the inside (left) lane and the rest in the middle lane. Shortly thereafter, the driver moved into the middle lane, but then merged partially

into the inside lane again. After the officer conducted a traffic stop, the driver identified herself as Ebony Smith, and the passenger was Dante Hampton. The car was a rental car that a man named Vernon James had rented about two hours earlier in Atlanta; Hampton was listed as an additional driver on the rental agreement, but Smith was not. According to the agreement, the car was supposed to be turned in at the Orlando, Florida airport.

While talking with Smith and Hampton, the officer observed that Smith appeared to be scared and that Hampton's hand was trembling, he avoided eye contact, and he seemed "unusually nervous." The officer noticed that there were some "bootleg" DVDs and CDs near the front console. Because Hampton was listed as a driver on the rental agreement, the officer asked Hampton for permission to search the car, and Hampton consented.[1]

On the floor behind the front passenger seat, the officer found a box for women's shoes that contained $5,300 in cash, including 202 $20 bills; the cash was divided into $1,000 increments of small denominations with rubber bands and packaged in plastic bags. The officer also smelled a strong odor of marijuana

---

[1] Smith does not challenge the legality of the traffic stop or the search of the car on appeal. A recording of the stop, detention and search was played for the jury at trial.

throughout the car and, near the trunk area, the odor of cocaine. In addition, he observed some white powder on the back seat of the car; field testing revealed that it was cocaine. The officer then searched the trunk and discovered a package containing 1,417.61 grams (about three pounds) of cocaine that had been hidden in the fender well. According to the officer, the amount and value of the cocaine was so great that it would only be entrusted to a drug trafficker or someone "high up" in a trafficking organization, and he noted that there was so much cocaine that it would "supply a town like Griffin for some time." Thus, it was his opinion that no one would have inadvertently left or forgotten the cocaine in the rental car and that it had been intentionally hidden so it could be smuggled to another city for distribution. Smith and Hampton were jointly indicted and tried for, inter alia, trafficking in cocaine.

At trial, Smith testified that she and Hampton lived in Florida and that, on Tuesday, May 29, 2007, the day before her arrest, they suddenly decided to go to Atlanta to visit some family members. According to Smith, they rode with two men she did not know, Vernon James and an unidentified man, in James' car, and she was uncertain about who paid for the trip. Smith testified that they all stayed overnight at James' apartment in Clayton County and that, the next evening, James rented a car, she and Hampton put their luggage in the car's trunk, and she started driving back to

Florida. Although Smith denied that she had been with James when he rented the car, Hampton testified that she was with him and James, but, because Smith was only twenty years old, she was too young to be authorized to drive the rental car.

On appeal, Smith argues that this evidence showed only that she was driving a rental car with cocaine hidden in the trunk and that others, including Hampton, had had access to the car. Therefore, she contends that the evidence was insufficient to show that she ever knowingly possessed or exercised any control over the cocaine.

"The equal access defense . . . is based on the rule that merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime." (Citation and punctuation omitted.) *Castillo v. State*, 288 Ga. App. 828, 829 (655 SE2d 695) (2007). The fact that other people, including Smith's co-defendant, had equal access to the car, however, does not automatically exculpate Smith. See id. Instead, it is for the jury to decide whether evidence that others may have had access to the car was sufficient to overcome evidence that Smith was in sole or joint, active or constructive possession of the drugs. Id.

"The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." (Citations and punctuation omitted.) *Lockwood v. State*, 257 Ga 796, 797-798 (364 SE2d 574) (1988) (The defendant was in actual possession of four bags of cocaine that were discovered hidden behind the rear seat of his car during a traffic stop.).

> A person is in constructive possession of an object when he knowingly has both the power and intention at a given time to exercise dominion over the object. A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction.

(Citations and punctuation omitted.) *Fluker v. State*, 296 Ga. App. 347, 349 (674 SE2d 404) (2009). When determining whether the defendant "knowingly had both the power and intention at a given time to exercise control" over drugs, the jury may infer the defendant's "power" from his or her access to the drugs, while they may look to the surrounding circumstances to determine whether the defendant had the requisite "intention." (Citation and punctuation omitted.) *Castillo v. State*, 288 Ga. App. at 830. "As long as there is slight evidence of access, power, and intention to exercise control

6

or dominion over the contraband, the question of fact regarding constructive possession remains within the domain of the trier of fact." (Punctuation and footnote omitted.) *Ferrell v. State*, 312 Ga. App. 122, 124 (1) (717 SE2d 705) (2011).

In this case, during the jury charge, the trial court instructed the jury on, inter alia, mere presence, actual and constructive possession, sole and joint possession, equal access, and parties to a crime. It also instructed the jury that they must reach separate verdicts as to each defendant on each charge. Ultimately, the jury concluded that Smith was in joint, constructive possession of more than 400 grams of cocaine with a purity of ten percent or more.

We conclude that the evidence presented was sufficient for the jury to find, beyond a reasonable doubt, that Smith knew about the cocaine and was acting jointly and in concert with Hampton in the possession and transportation of the drugs. See *Cochran v. State*, 300 Ga. App. 92, 94-96 (1) (a) (684 SE2d 136) (2009). As a result, they were authorized to find her guilty of trafficking in cocaine.

2. Smith contends that her trial counsel provided ineffective representation when he failed to challenge the admission of bad character evidence against Hampton, specifically the fact that, at the time of the traffic stop, Hampton was on probation following a cocaine conviction in Florida.

7

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). When the defendant does not call his trial counsel to testify at the hearing on the motion for new trial in order to explain why he or she acted, or failed to act, during trial, it is extremely difficult to overcome this presumption. *Jones v. State*, 279 Ga. 854, 855 (2) (622 SE2d 1) (2005); see also *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002).

"As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). Counsel's decisions about "what evidence to present or to forego in defending a client charged with a crime is a matter of strategy and tactics." (Citation omitted.) *Nichols v. State*, 281 Ga. 483, 485 (2) (a) (640 SE2d 40) (2007). Further, "[w]hether an attorney's trial

8

tactics [were] reasonable is a question of law, not fact." (Citation and punctuation omitted.) *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003). When this Court reviews a trial court's ruling on an ineffective assistance claim on appeal, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. at 76.

The record in this case shows that, as the trial began, Hampton made an oral motion in limine to exclude evidence that, at the time of his arrest, he was on probation in Florida for selling crack cocaine. The trial court denied the motion, and the evidence was presented to the jury. Following his conviction, Hampton appealed, asserting that the trial court erred in denying the motion. See *Hampton v. State*, 300 Ga. App. 49 (684 SE2d 118) (2009). This Court agreed and reversed his conviction, ruling that Hampton's statement was inadmissible character evidence and that the trial court committed harmful error when it denied the motion in limine, particularly due to the fact that Hampton "vigorously denied [his] guilt or any knowledge of the drugs or money found in the car[.]" Id. at 49-50 (1).[2]

_____

[2] On appeal, Smith also attempts to directly challenge the trial court's denial of Hampton's motion in limine to exclude this evidence. However, she lacks standing to challenge that ruling. See *Rogers v. State*, 211 Ga. App. 67 (1) (438 SE2d 140) (1993)

9

In her appeal, Smith argues that, because Hampton's conviction was reversed due to the improper and prejudicial admission of his prior cocaine conviction, "it would logically follow that, ipso facto, [her] trial counsel was ineffective" for failing to join Hampton's motion in limine or to object to that evidence at trial. Smith has failed, however, to support this argument with any authority.

Moreover, Smith failed to call her trial counsel as a witness during the motion for new trial hearing, and the record supports the trial court's finding that Smith's counsel had made a conscious, strategic decision not to oppose the admission of evidence of Hampton's cocaine conviction.[3] At trial, both co-defendants denied knowing anything about the shoebox full of cash or the cocaine, and they suggested that James or someone else must have hidden the cocaine in the trunk without their knowledge. More importantly, though, they both tried to attack the other's credibility and to implicate the other in the crime. For example, Smith testified that Hampton had

(The defendant lacked standing to assert and rely on his co-defendant's right to challenge the voluntariness and admissibility of an inculpatory statement made by the co-defendant.).

[3] See *Morgan v. State*, 275 Ga. 222, 227 (10) (564 SE2d 192) (2002) ("Because [the defendant's] trial attorney did not testify on the motion for new trial, [he] made no affirmative showing that the purported evidentiary deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy.") (citation and punctuation omitted).

asked her to go to Atlanta with him, that Hampton was unemployed in May 2007, that Hampton had asked her to drive the rental car, and that James was Hampton's cousin, and her counsel specifically elicited Hampton's admission that he had been convicted of selling crack cocaine in Florida during cross-examination, even though such admission was cumulative of Hampton's earlier testimony. In contrast, Hampton testified that Smith was his girlfriend, that she had asked him to go with her to Atlanta to visit her family, that he never drove the rental car, and that, contrary to Smith's testimony that she did not know James before the trip, James was actually her cousin.

Finally, during the motion for new trial hearing, Smith's appellate counsel admitted that "I don't think [Smith's trial counsel] was ineffective in his trial strategy because [his failure to object to the evidence of Hampton's conviction] was obviously a trial strategy that was forced on him by the circumstances of the case." Ultimately, the court concluded that Smith's trial counsel's "strategy of getting to the [criminal] record of [Hampton] was an appropriate trial strategy" and a "wise decision" on counsel's part, especially because the co-defendants presented conflicting defenses.

Because the record supports this conclusion, we find that Smith has failed to demonstrate that her trial counsel rendered ineffective assistance. See *Robinson v. State*, 277 Ga. at 76.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur.*

11