# FOURTH DIVISION
## DOYLE, P. J.,
## ANDREWS and BOGGS, JJ.

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**August 30, 2012**

# In the Court of Appeals of Georgia

A12A1386. WATT v. THE STATE.                               DO-053 C

DOYLE, Presiding Judge.

Following a jury trial, Alphanso Watt appeals his conviction for trafficking in marijuana,[1] arguing that there was insufficient evidence to corroborate the testimony of his alleged accomplice and that the trial court erred by denying his motion to suppress and by admitting similar transaction evidence. We affirm, for the reasons that follow.

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and the defendant no longer enjoys a presumption of innocence;

---

[1] OCGA § 16-13-31 (c) (1).

moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[2]

So viewed, the evidence shows that on August 17, 2009, Drug Enforcement Agency ("DEA") agents in Tucson, Arizona, were contacted by the local manager of Old Dominion Freight Lines about a suspicious crate being shipped to Douglas County, Georgia. A DEA agent determined that the package contained marijuana and contacted law enforcement officials in Douglas County to arrange for a controlled delivery of the crate to Old Dominion loading docks there.

The crate arrived on August 19, 2009, and Sergeant Mauney of the Douglas County Sheriff's Office secured the package. A K-9 unit was deployed to perform a free-air sniff, and a dog signaled the presence of narcotics in the crate. After the dog's alert, police obtained a search warrant.

The day the crate arrived, Old Dominion received a call inquiring about it. Acting as an employee, Mauney told the caller the crate would not be delivered until the next day but that the caller could retrieve the crate from the warehouse instead if he wanted to do so. There were two other calls inquiring about the crate; Mauney

---

[2] (Punctuation omitted.) *Clyde v. State*, 298 Ga. App. 283 (680 SE2d 146) (2009).

2

testified he believed all three calls were made by the same person. During the third call, the caller said he would arrive shortly to pick up the crate.

Within twenty minutes, law enforcement agents stationed at the Old Dominion warehouse observed a silver Toyota Camry and a gold Ford pickup truck parked in the road just outside the gated entrance to the property. The occupants of the vehicles were observed engaging in conversation before driving up the driveway to the loading docks and parking outside the warehouse office. There, two individuals talked outside of the vehicles while one remained inside; law enforcement was unable to identify them at a distance. The driver of the truck, later identified as Oswald Forsyth, entered the office and claimed the crate, while the Camry left the premises. Officers present at the scene recorded the license plate number of the Camry. As soon as Forsyth took possession of the crate, law enforcement approached and took him into custody. The crate contained 5 large bales of marijuana, totaling approximately 150 pounds.

Officers then issued a "be on the lookout" alert ("BOLO") for the silver Toyota Camry with the last four digits of the recorded license plate number pulling out onto Riverside Parkway where the Old Dominion property was located. Deputy Aaron Smith responded immediately to the BOLO and spotted a silver Camry leaving a

3

nearby neighborhood recreation center. The driver turned in the opposite direction upon seeing the police car, and Smith followed the Camry for two miles, confirmed the license plate number and vehicle description on the BOLO, and initiated a traffic stop. Only five to ten minutes had elapsed from the issuance of the BOLO to the time Smith stopped the Camry.

Watt, who was driving the Camry, and the passenger were placed in handcuffs and taken into custody. A search of the Camry revealed various tools in the trunk, including a blue crowbar, hammers, screwdrivers, and a cordless electric drill. Investigator Randy Folsom testified at trial that those were the types of tools that could have been used to open the crate. Watt's father-in-law, who owned the Camry, testified that the tools were his, but he also said his crowbar was black and that he owned a Black and Decker cordless drill, when the tools found in the car only included a blue crowbar and a Craftsman drill. .

Forsyth, Watt's brother-in-law, testified at trial that Watt asked to borrow his truck on August 20th, 2009, in order to pick up a package. According to Forsyth, Watt instructed him to pick up the crate from the Old Dominion facility and said that they would switch vehicles after Forsyth had done so.

4

Following a jury trial, Watt was convicted of the alleged charge, and this appeal followed.

1. Watt argues that the there was insufficient evidence to support his conviction because the only evidence connecting him with the crime was the testimony of an alleged accomplice. We disagree.

"The testimony of a single witness is generally sufficient to establish a fact. However, . . . where the only witness is an accomplice, the testimony of a single witness is not sufficient."[3] "And as the Supreme Court of Georgia has further noted, the corroboration rule of OCGA § 24-4-8 is made more stringent by the requirement, not contained in the statute, that the [S]tate must provide corroboration of an accomplice's testimony regarding the identification and participation of the defendant."[4]

> The conduct of a defendant before, during the time of, and after the commission of a crime may be considered by the jury in establishing his intention and his participation, to determine whether or not such intention and conduct were sufficient corroboration of the testimony of

---

[3] (Punctuation omitted.) *James v. State*, ___ Ga. App. ___, ___ (1) (Case No. No. A12A0301, decided June 26, 2012), citing OCGA § 24-4-8.

[4] (Punctuation omitted.) *Gilmore v. State*, 315 Ga. App. 85, 87 (1) (726 SE2d 584) (2012).

an accomplice to sustain a conviction. This may be done by circumstantial as well as by direct evidence.[5]

Here, the evidence offered by the State corroborated Forsyth's testimony. Less than 15 minutes after Forsyth was arrested, Watt – Forsyth's brother-in-law – was pulled over in the same vehicle that was present at the scene immediately before Forsyth retrieved the crate from the warehouse. Deputy Smith testified that it appeared as if Watt was "waiting for something" at the recreation center entrance, which corroborates Forsyth's testimony that he and Watt planned to switch vehicles after taking delivery of the crate. Finally, the Camry that Watt was driving contained various tools that could have been used to open a large wooden crate. This evidence was sufficient to corroborate Forsyth's testimony regarding Watt's involvement.[6]

2. Watt argues that the trial court erred by denying his motion to suppress because Deputy Smith's stop of Watt's vehicle was not predicated on a reasonable, articulable suspicion of criminal activity. This enumeration is without merit.

---

[5] (Punctuation omitted.) *Alatise v. State*, ___ Ga. ___, ___ (5) (Case No. S12A0024, decided June 18, 2012).

[6] See *Copeny v. State*, ___ Ga. App. ___, ___ (1) (b) (Case Nos. A11A1876, A12A0283, decided June 25, 2012); *Jackson v. State*, 289 Ga. 798, 801-802 (716 SE2d 188) (2011); *Clanton v. State*, 208 Ga. App. 669, 670 (1) (a) (431 SE2d 453) (1993).

On appeal from a motion to suppress, the evidence is viewed in a light most favorable to upholding the trial court's judgment. The credibility of witnesses and the weight accorded their testimony rest with the trier of fact. Thus, the trial court's findings on disputed facts and credibility must be accepted unless clearly erroneous. Where the evidence is uncontroverted and there is no issue as to witness credibility, however, we review de novo the trial court's application of the law to the undisputed facts.[7]

A law enforcement officer is authorized to stop an automobile and conduct a limited investigation of its occupants, without probable cause, if that officer has reasonable grounds for such action and the stop is not arbitrary or harassing. There needs to be a particularized and objective basis for suspecting the particular person stopped of criminal activity.[8]

Here, a BOLO had been issued for the Toyota Camry, which police observed at the Old Dominion warehouse; the BOLO included a description of the vehicle, the last known road the driver had turned onto, and the last four digits of the vehicle's license plate. Deputy Smith observed a car matching the BOLO description within five to ten minutes after the BOLO was issued in the area of the warehouse.

---

[7] (Punctuation omitted.) *Groves v. State*, 306 Ga. App. 779 (703 SE2d 371) (2010).

[8] (Punctuation and footnote omitted.) *Murray v. State*, 282 Ga. App. 741, 742 (639 SE2d 631) (2006).

According to Smith, the Camry was just "sitting there," until Smith passed them in his patrol car, at which time the driver pulled out and drove away. Under these circumstances, Smith "had an objective, reasonable suspicion of criminal activity that would justify the stop."[9]

3. In his final enumeration, Watt argues that the trial court erred by admitting similar transaction evidence. We disagree.

Prior to trial, the trial court conducted a similar transaction hearing at which the State argued that it sought to introduce evidence of a 2003 arrest in Tuscon, Arizona, to show Watt's bent of mind and course of conduct. Karen Couture, a sheriff's detective assigned to the DEA in Tucson, was investigating possible narcotics trafficking at an apartment complex in June 2003. After observing a suspicious transaction between occupants of an apartment and men in a truck, Couture and other agents approached, and the suspects fled the area. Watt was apprehended fleeing the scene. A subsequent search of the apartment that Watt exited

---

[9] *McNair v. State*, 267 Ga. App. 872, 874 (1) (600 SE2d 830) (2004) (traffic stop justified because a BOLO had been issued for the car the suspects were driving based on a police officer's observation of the car leaving the scene of a crime). See also *Faulkner v. State*, 277 Ga. App. 702, 704-705 (1) (627 SE2d 423) (2006) (traffic stop justified because the BOLO provided the make, model, and color of the vehicle, the number and race of the occupants, and the location and direction of travel).

revealed several large bales of marijuana, scales, plastic wrap, and Watt's cell phone next to one of the bales on the coffee table in the living room immediately inside the apartment, as well as a bale of marijuana on the kitchen counter and marijuana scattered on the kitchen floor. Watt was charged with "possession of marijuana for sale"; the charge was ultimately dismissed.

> To introduce evidence of a similar transaction, the State must show three things: (1) that evidence of the independent offense is being introduced for an appropriate purpose and not to impugn the defendant's character; (2) sufficient evidence establishes that the defendant committed the independent offense; and (3) the independent offense is sufficiently connected or similar to the crime charged so that proof of the former tends to prove the latter. When considering the admissibility of similar transaction evidence, the proper focus is on the similarities between the prior act and the charged crime, not the differences.[10]

"When reviewing the trial court's factual findings regarding whether the [S]tate satisfied the three-prong test, we apply the clearly erroneous standard. The decision

---

[10] (Citation omitted.) *Nelson v. State*, 305 Ga. App. 425, 428 (3) (699 SE2d 783) (2010).

to admit similar transaction evidence which satisfies the three-prong test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion."[11]

(a) Watt argues that the State failed to prove that there was sufficient similarity between the independent offense and the instant case, pointing out certain differences between the two transactions. As we have previously noted, however, the prior offense

> does not have to be identical to the crime charged to be admissible as a similar transaction. The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity. Similar transaction evidence can be introduced to prove motive [or bent of mind] when there exists some logical connection between the similar transaction evidence and the charged offense so that the similar transaction evidence tends to establish the charged offense.[12]

---

[11] (Footnote and punctuation omitted.) *Wright v. State*, 313 Ga. App. 829, 831 (1) (a) (723 SE2d 59) (2012).

[12] (Punctuation and footnote omitted.) *Celestin v. State*, 296 Ga. App. 727, 736 (4) (675 SE2d 480) (2009).

Here, in both transactions, Watt was in possession of or attempted to possess substantial amounts of marijuana. The independent transaction occurred in Tucson, Arizona, which was the origination of the shipment of 150 pounds of baled marijuana that was delivered to the warehouse in the instant case. Under these facts, the trial court did not abuse its discretion in concluding that sufficient similarities existed between the prior offense and the crime charged.[13]

(b) Watt also contends that the State failed to prove that he committed the separate offense, asserting that spatial proximity or mere presence at the scene of the crime is insufficient to support a conviction. That was not, however, the only evidence connecting Watt to the marijuana. According to the evidence at the similar transaction hearing, Watt exited the apartment immediately before the police approached, and he fled when police approached. His cell phone was on the table adjacent to the large amount of marijuana, scales, and plastic wrap on the coffee table in the living room immediately inside the apartment, and there was an additional bale of marijuana on the kitchen counter and marijuana scattered on the kitchen floor.

---

[13] See id. at 735-736 (4); *Sherrer v. State*, 289 Ga. App. 156, 158 (1) (a) (656 SE2d 258) (2008).

11

The circumstantial evidence in this case shows a connection between [Watt] and the [marijuana] found in the apartment beyond mere presence and spatial proximity, or at least a rational trier of fact could find that it does. It also is sufficient to exclude every reasonable hypothesis, save that [Watt] intended to exercise dominion and control over the [marijuana].[14]

Accordingly, the trial court did not abuse its discretion by admitting the similar transaction evidence.

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[14] *Holiman v. State*, 313 Ga. App. 76, 83 (1) (720 SE2d 363) (2011) (physical precedent only) (evidence sufficient to show possession of large amount of drugs found in the apartment that the defendant shared with his brother where the drugs were plain and visible in the common sitting area of the apartment and the defendant hid and attempted to flee when the police forcibly entered the apartment). See also *Moody v. State*, 232 Ga. App. 499, 501-503 (1) (502 SE2d 323) (1998) (evidence supported possession conviction of cocaine found in plain view in an apartment where the defendant was visiting based on evidence that the defendant attempted to flee and elude police).