**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 14, 2013**

# In the Court of Appeals of Georgia

A12A2011. GARCIA v. THE STATE.

A12A2012. CALDERON v. THE STATE.

DILLARD, Judge.

Following a jury trial, Ramiro Garcia was convicted on one count of trafficking in cocaine, one count of making an improper lane change, and one count of driving without a license. The same jury convicted his co-defendant, Jose Calderon, on one count of trafficking in cocaine, one count of trafficking in methamphetamine, and one count of possession of cocaine. Both defendants appeal their convictions and the denial of their respective motions for new trial, arguing that the evidence was insufficient to support their drug-related convictions. In addition, Garcia contends that the trial court erred in denying his motion to sever his trial from that of his co-defendant, and Calderon argues that the trial court erred in allowing the State to

present similar-transaction evidence and denying his ineffective-assistance-of-counsel claim. Because the charges arose from the same set of facts and the defendants were jointly tried, we have consolidated their separate appeals for review. And for the reasons set forth *infra*, we affirm in both cases.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on October 2, 2009, an agent with the U. S. Department of Homeland Security Immigration and Customs Enforcement ("ICE") received information from a confidential informant that drug-trafficking operations were being conducted out of a Mexican restaurant in the Forest Park area of Clayton County and a nearby residence located at 498 Sirocco Court. Based on this information, the very next day, drug-task-force officers with ICE and the Clayton County Police Department set up surveillance teams to monitor activity at both locations. Around 1:00 p.m., officers observed a white pickup truck approach and park in front of the 498 Sirocco Court residence. Subsequently, the driver and sole occupant of the truck—ultimately identified as Ramiro Garcia—entered the house and exited 15 minutes later, carrying a white plastic grocery bag that appeared to contain a large square object. Garcia then

---

[1] *See, e.g., Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

drove away from the house, at which point one of the task-force officers followed him and radioed for a uniformed patrol officer to do the same.

Several minutes later, as Garcia was traveling northbound on Interstate 75, the patrol officer saw him abruptly change lanes without signaling. Consequently, the officer initiated a traffic stop, during which he determined that Garcia did not have a valid driver's license and, thus, arrested him. Following Garcia's arrest, the officer conducted an inventory search of Garcia's truck so that the vehicle could be removed from the Interstate and impounded. And while searching the truck's center console, the officer discovered a white plastic bag, which contained a brick of cocaine weighing over one kilogram.

Based on these circumstances, drug-task-force officers obtained a warrant to search the house at 498 Sirocco Court. But before doing so, they arrested the resident of the home—identified as Jose Calderon—outside of the Mexican restaurant that was also under surveillance, after determining that Calderon had become aware that he was being followed. And just as the officers approached the residence to execute the warrant, they observed an unknown male—later identified as Ariolla Camareno—attempting to break into the house and, thus, arrested him. Thereafter, the officers began their search, during which they discovered large quantities of both

3

cellophane-wrapped cocaine and bagged methamphetamine hidden in the kitchen pantry and in a utility room located in the garage. In addition to the drugs, the officers found digital scales, a laptop computer, and a large amount of cash. The officers also noticed that it appeared that someone lived in the house and, in fact, during the search, the owner of the home arrived to collect a rent check and confirmed that Calderon lived there as his tenant.

Two days after the initial search of the Sirocco Court residence, the drug-task-force officers received another tip from the confidential informant, indicating that the house contained more drugs that the officers had failed to discover. Consequently, the officers obtained a second search warrant, which they executed on October 6, 2009. Specifically, the officers searched an inoperable automobile, which was parked in the house's garage, and found secret compartments in the vehicle containing a large amount of methamphetamine. During this second search of the home, the officers also found a photograph of Calderon, as well as numerous receipts and the title to a vehicle, all of which bore Calderon's name.

Calderon and Garcia were jointly indicted on one count of trafficking in cocaine.[2] In the same indictment, Calderon was also charged with one count each of

---

[2] *See* OCGA § 16-13-31 (a) (1).

4

trafficking in methamphetamine,[3] possession of cocaine,[4] and possession of marijuana.[5] Garcia was also charged with one count each of improper lane change[6] and driving without a license.[7] Prior to trial, the State filed a notice of intent to present Calderon's 2004 trafficking-in-methamphetamine conviction as similar-transaction evidence against him. And following a pre-trial hearing, the trial court ruled that this evidence was admissible.

The case then proceeded to trial. After a jury was chosen, Garcia reiterated a request to sever his trial from that of Calderon, which he had apparently first made at calendar call a week or so earlier. After hearing argument on the issue, the trial court denied Garcia's motion on the grounds that it was untimely and lacked merit. Subsequently, the State presented its case, which included testimony from several of the drug-task-force officers concerning their surveillance and searches of Garcia's truck and Calderon's house. In addition, the owner of Calderon's house testified that

---

[3] *See* OCGA § 16-13-31 (e).

[4] *See* OCGA § 16-13-30 (a).

[5] *See* OCGA § 16-13-30 (j) (1). Prior to the start of trial, the State entered an order of *nolle prosequi* as to this charge.

[6] *See* OCGA § 40-6-48 (1).

[7] *See* OCGA § 40-5-20 (a).

he leased the residence to Calderon and that Calderon lived there. A GBI forensic chemist also testified that the total amount of cocaine recovered from Garcia's truck and Calderon's home weighed over 10 kilograms and had an average purity of 48 percent. The chemist further testified that the total amount of methamphetamine recovered from the house weighed over 8.5 kilograms. Finally, the State presented the similar-transaction evidence against Calderon, which consisted of testimony that in 2003, he was arrested for trafficking in methamphetamine, while using the alias Jesus Alvarez, and pleaded guilty to that charge in 2004. A comparison of fingerprints showed that Calderon and Alvarez were, indeed, the same person.

At the trial's conclusion, the jury found Garcia and Calderon guilty on all counts. Thereafter, both defendants obtained new counsel and filed separate motions for new trial, which in Calderon's case included a claim of ineffective assistance. The trial court denied defendants' motions, and these appeals follow.

1. Garcia contends that the evidence was insufficient to support his conviction of trafficking in cocaine. And similarly, Calderon contends that the evidence was insufficient to support his convictions of trafficking in cocaine, trafficking in methamphetamine, and possession of cocaine. We disagree in both cases.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[8] Furthermore, in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[9] Consequently, the jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[10] With these guiding principles in mind, we will now address Garcia and Calderon's specific challenges to the sufficiency of the evidence.

(a) Garcia contends that the evidence was insufficient to prove that he knowingly possessed the cocaine found in his truck, arguing that others had equal access to the vehicle. We find this argument unavailing.

---

[8] *See Powell*, 310 Ga. App. at 144.

[9] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[10] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

7

Georgia law recognizes two kinds of possession, "actual possession and constructive possession."[11] Obviously, a person who knowingly has direct physical control over a thing at a given time is "in actual possession of it."[12] And a person is in constructive possession of an object when "he knowingly has both the power and intention at a given time to exercise dominion over the object."[13] However, a finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity, and "[e]vidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction."[14] Furthermore,

> [w]hen determining whether the defendant knowingly had both the power and intention at a given time to exercise control over drugs, the jury may infer the defendant's power from his or her access to the drugs, while they may look to the surrounding circumstances to determine whether the defendant had the requisite intention.[15]

---

[11] *Smith v. State*, 316 Ga. App. 175, 177 (728 SE2d 808) (2012) (punctuation omitted).

[12] *Id.* (punctuation omitted).

[13] *Id.* (punctuation omitted).

[14] *Id.* at 177-78 (punctuation omitted).

[15] *Id.* at 178 (punctuation omitted).

And as long as there is slight evidence of access, power, and intention to exercise control or dominion over the contraband, "the question of fact regarding constructive possession remains within the domain of the trier of fact."[16]

Here, as noted *supra*, drug-task-force officers observed Garcia exit the 498 Sirocco Court house carrying a bag that appeared to contain a brick of cocaine before driving away in his truck. And when officers stopped his vehicle a short time later, they found over a kilogram of cocaine inside a white plastic bag, which was hidden in the truck's center console. Given that an owner or driver of an automobile, in the absence of any circumstances to the contrary, is "presumed to have possession and control of contraband found in the automobile[,]"[17] the evidence was sufficient to support Garcia's trafficking-in-cocaine conviction.[18]

Nevertheless, Garcia argues that the evidence of his possession of the cocaine is rendered insufficient because the State failed to disprove that someone other than

---

[16] *Id.* (punctuation omitted).

[17] *Miller v. State*, 298 Ga. App. 792, 793-94 (1) (681 SE2d 225) (2009).

[18] *See Mangum v. State*, 308 Ga. App. 84, 87 (1) (706 SE2d 612) (2011) (holding that "in the absence of unrebutted affirmative evidence demanding a finding of equal access, the jury was authorized to convict [defendant] of the drug-possession charges" (punctuation omitted)); *Garcia v. State*, 293 Ga. App. 422, 426 (2) (667 SE2d 205) (2008) (same).

himself had equal access to his vehicle. But this argument is misguided. Garcia is certainly correct that the equal-access defense is based on the rule that "merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime."[19] Here, however, when Garcia arrived at the Sirocco Court residence, when he left the residence, and when he was stopped for the traffic violation, he was the *sole* occupant of his truck. Indeed, the record is devoid of any evidence that someone other than Garcia had access to his truck. Under these circumstances, the equal-access rule does not apply to rebut the presumption that Garcia possessed his truck's contents.[20]

(b) Calderon similarly contends that the evidence was insufficient to prove that he knowingly possessed the cocaine and methamphetamine found in his residence, arguing that others had equal access to the house. This contention lacks merit.

---

[19] *Smith*, 316 Ga. App. at 177 (punctuation omitted).

[20] *See Garcia*, 293 Ga. App. at 426 (2) (holding that the equal-access rule does not apply when the defendant was the driver and sole occupant of his vehicle in which the contraband was found, and defendant presented no evidence that others had access).

As previously noted, the State presented evidence that over 10 kilograms of cocaine and over 8.5 kilograms of methamphetamine were discovered in the house that officers observed Calderon entering and exiting. Additionally, the owner of the home testified that he rented the property to Calderon and observed him living there. Furthermore, during their search of the house, officers found a laptop belonging to Calderon, as well as various receipts and other documents bearing his name. Based on this evidence, the jury could infer that Calderon had constructive possession of both the cocaine and the methamphetamine found in the house.[21]

Similar to Garcia, Calderon also argues that the evidence did not support the jury's finding that he possessed the drugs because others—presumably the owner of the house and the attempted burglar Camareno—had equal access. However, Calderon presented no evidence that the owner or Camareno actually had equal access to the home. In fact, the evidence at trial was that Camareno was stopped by police from attempting to break into the residence and that the owner only visited the

---

[21] *See Lott v. State*, 303 Ga. App. 775, 779 (1) (694 SE2d 698) (2010) (holding that defendants had constructive possession of drugs found in house, even though neither owned or rented the residence, based upon other evidence that both were living there); *Castillo v. State*, 288 Ga. App. 828, 830 (655 SE2d 695) (2007) (holding that evidence showed that defendant had possession of drugs, given that she identified the residence as her apartment and that police recovered a bill for satellite television services to the apartment in her name).

house to collect the rent check. Furthermore, even if we accepted Calderon's speculative argument that the owner or Camareno had access to the house, "while the fact that others had equal access to the drugs may inculpate them, such evidence does not automatically exculpate [Calderon]."[22] Instead, the question of whether the evidence that others had access to the contraband was sufficient to rebut the evidence that Calderon was in possession of the drugs was one properly reserved for the jury.[23] Accordingly, the evidence was sufficient for the jury to find Calderon guilty beyond a reasonable doubt.[24]

2. Garcia also contends that the trial court erred in denying his motion to sever his trial from that of his co-defendant. We disagree.

It is well established that the decision whether to grant or deny a motion to sever is "within the discretion of the trial court."[25] Moreover,

[i]n exercising its discretion the trial court should consider the following three factors: (1) whether the number of defendants will create

---

[22] *Lott*, 303 Ga. App. at 780 (1) (punctuation omitted).

[23] *Id.*

[24] *See id.*; *Castillo*, 288 Ga. App. at 830.

[25] *Daniels v. State*, 306 Ga. App. 577, 584 (5) (703 SE2d 41) (2010) (punctuation omitted).

confusion of the law and evidence applicable to each defendant; (2) whether there is a danger that evidence admissible against one defendant will be considered against another despite cautionary instructions to the contrary; and, (3) whether the defenses of the co-defendants are antagonistic to each other.[26]

Furthermore, the burden is on the defendant requesting the severance to do more than "raise the possibility that a separate trial would give him a better chance of acquittal."[27] Rather, to prevail on a motion to sever, the defendant "must make a clear showing of prejudice and a consequent denial of due process."[28]

In the case *sub judice*, as the trial court noted, Garcia's motion to sever was untimely, given that he did not raise the issue until shortly before his trial began.[29] But even if Garcia's motion had been timely, he has not shown that he was prejudiced by being tried jointly with Calderon. First, the number of defendants (two) was small enough so that the danger of confusion was minimal, especially in light of the fact

---

[26] *Id.* (punctuation omitted).

[27] *Id.* (punctuation omitted).

[28] *Id.* (punctuation omitted).

[29] *See* OCGA § 17-7-110 ("All pretrial motions . . . shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court.").

13

that Garcia and Calderon's offenses were committed as part of the same crime scheme, *i.e.*, trafficking.[30] In addition, both Garcia and Calderon simply denied being knowingly in possession of the illegal drugs, and therefore, their defenses were not antagonistic to one another.[31] And while the better practice, perhaps, would have been for the trial court to instruct the jury that the similar-transaction evidence was being offered specifically as to Calderon and not to Garcia,[32] the court's failure to do so was of no consequence. Indeed, the State expended considerable effort proving that *Calderon* was the same person who committed the 2003 trafficking offense, including demonstrating that his fingerprints were identical to those of the alias Calderon used at that time. As such, the notion that *Garcia* was somehow prejudiced by an evidentiary showing made by the State against *Calderon* strains credulity and can in

---

[30] *Lankford v. State*, 295 Ga. App. 590, 592 (1) (672 SE2d 534) (2009) (holding that trial court did not err in denying defendant's motion to sever when number of defendants was sufficiently small so as to minimize the danger of confusion).

[31] *Jones v. State*, 318 Ga. App. 26, 36 (5) (733 SE2d 72) (2012) (holding that defendants' defenses were not antagonistic to one another when both completely denied participating in shooting).

[32] *See, e.g.*, *White v. State*, 315 Ga. App. 54, 62 (7) (726 SE2d 548) (2012).

no sense be considered to have prejudiced *Garcia's* defense.[33] Thus, the trial court did not abuse its discretion in denying Garcia's motion to sever.

3. Calderon also contends that the trial court erred in admitting his 2004 trafficking-in-methamphetamine conviction as similar-transaction evidence, arguing specifically that the prejudicial effect of that evidence outweighed its probative value. Once again, we disagree.

In considering this enumeration of error, we begin by noting that when reviewing the trial court's factual findings regarding whether the state satisfied the three-prong test mandated by *Williams v. State,*[34] "we apply the 'clearly erroneous' standard."[35] And the decision to admit similar-transaction evidence which satisfies the three-prong test is within the trial court's discretion "and will not be disturbed absent an abuse of that discretion."[36] Under *Williams,* to be admissible for the

---

[33] *Cf. Butler v. State*, ___ Ga. ___, 2013 WL 399133, *5 (2013) (Blackwell, J.) (noting that "comments upon the patently obvious generally pose little, if any, danger of prejudice").

[34] 261 Ga. 640 (409 SE2d 649) (1991).

[35] *Reed v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012) (punctuation omitted).

[36] *Id.* (punctuation omitted).

15

purposes of establishing motive, intent, course of conduct or bent of mind, the State must show "(a) sufficient evidence that the similar transaction occurred and (b) sufficient connection or similarity between the similar transaction and the crime alleged so proof of the former tends to prove the latter."[37] Importantly, when considering the admissibility of similar-transaction evidence, the proper focus is on "the similarities, not the differences, between the separate crime and the crime in question."[38]

And here, during a pre-trial hearing, the State presented evidence that Calderon was arrested for trafficking in methamphetamine in 2003, while using the alias Jesus Alvarez, after a large amount of methamphetamine was found in his vehicle and the house in which he was living. Additional evidence indicated that, using the alias Alvarez, Calderon pleaded guilty to that charge in 2004. The State further proffered a fingerprint comparison proving that Calderon and Alvarez were in fact the same person. Based on this evidence, and the fact that the current charges in the instant case also involved trafficking in large amounts of methamphetamine and cocaine, the

---

[37] *Gresham v. State*, 303 Ga. App. 682, 685 (2) (695 SE2d 73) (2010) (punctuation omitted); *see Williams*, 261 Ga. at 642 (2) (b).

[38] *Gresham*, 303 Ga. App. at 685 (2) (punctuation omitted).

16

trial court found that the earlier trafficking conviction was admissible to show Calderon's course of conduct and bent of mind. Under Georgia law, if a defendant is proven to be the perpetrator of another drug crime and the facts of that crime are sufficiently similar or connected to the facts of the crime charged, "the separate crime will be admissible to prove identity, motive, plan, scheme, bent of mind, or course of conduct."[39] Thus, the trial court did not err in admitting the similar-transaction evidence.[40]

4. Finally, Calderon contends that the trial court erred in denying his claim that his trial counsel provided ineffective assistance. Specifically, he argues that his counsel rendered ineffective assistance by making an improper comment during opening statements and then by failing to move for a mistrial after the trial court

---

[39] *Sherrer v. State*, 289 Ga. App. 156, 158 (1) (a) (656 SE2d 258) (2008) (punctuation omitted).

[40] *See Watt v. State*, 317 Ga. App. 551, 556-57 (3) (a), (b) (732 SE2d 96) (2012) (holding that prior trafficking-in-marijuana conviction was sufficiently similar to trafficking-in-marijuana charge in instant case and was, therefore, admissible to show defendant's bent of mind); *Celestin v. State*, 296 Ga. App. 727, 736 (4) (675 SE2d 480) (2009) (holding that prior trafficking-in-cocaine conviction was sufficiently similar to current trafficking-in-cocaine charge and, thus, was admissible to show defendant's bent of mind); *Sherrer*, 289 Ga. App. at 158 (1) (a) (holding that defendant's arrest for possession of methamphetamine with intent to distribute was admissible to show defendant's bent of mind in instant trafficking case).

17

issued a curative instruction to remedy any potential harm caused by that comment. Again, we disagree.

It is well settled that in order to prevail on his claim of ineffective assistance of counsel, Calderon must show that his trial "counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[41] Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[42] Furthermore, unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*.[43]

---

[41] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984).

[42] *Chapman*, 273 Ga. at 350 (2); *see Strickland*, 466 U.S. at 689 (III) (A) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .").

[43] *Henderson v. State*, 303 Ga. App. 898, 898 (1) (695 SE2d 334) (2010).

Turning to Calderon's specific claims, following his arrest outside of the Mexican restaurant, Calderon moved to suppress a handgun and a large amount of cash that were found as a result of a search of his vehicle. In a consent order, the trial court suppressed the handgun and cash and further ordered that Calderon could not refer to a "lack of money or guns being present" in Calderon's vehicle at the time of his arrest. However, during his opening statement at trial, Calderon's counsel apparently stated that "zero" had been found in his client's vehicle when he was arrested. Immediately after opening statements concluded, the trial court held a bench conference, during which the State argued that Calderon's counsel's remarks violated the consent suppression order and opened the door to the admission of the handgun and cash.[44] Calderon's counsel countered that he did not agree that his remarks violated the consent order, arguing that the order only prohibited him from specifically stating that neither guns nor money were found in Calderon's car. He further argued that even if his remarks violated the order, he had certainly not done so purposefully.

---

[44] Neither parties' opening statements were transcribed, but during the ensuing bench conference, Calderon's counsel did not dispute the State's characterization of his remarks.

Following these arguments, the trial court found that the remark by Calderon's counsel was improper but that it did not open the door to the admission of the handgun or cash. Instead, the court stated that it would issue a curative instruction, to which both parties agreed. Thus, when the jury returned, the court informed them as follows:

> There was a mention in the opening statements about a search of Calderon's vehicle he was in, at a restaurant, on the date of his arrest. And prior to the trial, there was a motion filed about that search and I issued an order saying that details of that search would not be admissible during the course of this trial; neither side can go into it. So, I've excluded any evidence about what was or was not found in that car, in that search, on that day; you will not hear anything during the trial and you're to disregard any reference that was made to it in opening by either one of the attorneys.
>
> Remember what I told you yesterday, what the three things are that constitute evidence; you have not heard any evidence yet. One thing that's not evidence is what the lawyers say during the trial in opening statements or closing arguments. So, just put that out of your mind and base your decision on the evidence that you hear and not about, on any speculation or any statements made by attorneys.

Calderon now argues that his trial counsel rendered ineffective assistance when he remarked that "zero" was found during the search of his client's vehicle and that

counsel compounded this mistake by failing to request a mistrial after the trial court issued its curative instruction. He further argues that counsel's mistakes prejudiced him by making the jury aware that evidence had been suppressed. However, there is no evidence in the record indicating that Calderon's trial counsel ever testified regarding this alleged deficient performance and "without testimony from trial counsel on the reasons for his actions, [those] decisions are presumed to be strategic and thus insufficient to support an ineffective assistance of counsel claim."[45]

Furthermore, with regard to trial counsel's failure to move for a mistrial after the court issued its curative instruction to the jury, "[a] conviction will not be reversed if the opening statement was made in good faith, and the trial court instructs the jury that opening statements are not to be considered as evidence during deliberations."[46] That is precisely what the trial court did here. Therefore, any objection or motion for a mistrial by Calderon's trial counsel would have lacked merit, and "[t]he failure to pursue a futile objection does not amount to ineffective

---

[45] *Bright v. State*, ___ Ga. ___, (2) (a), Slip op. at 2 (Case No. S12A1735; decided Jan. 7, 2013) (punctuation omitted).

[46] *Simmons v. State*, 291 Ga. 705, 709 (6) (733 SE2d 280) (2012) (punctuation omitted).

21

assistance."[47] Moreover, even assuming *arguendo* that his trial counsel performed deficiently, Calderon has failed to show a reasonable probability that the outcome of his trial would have been different given that there was overwhelming evidence that he was guilty of the crimes charged.[48] Accordingly, the trial court did not err in denying Calderon's claim of ineffective assistance of counsel.

*Judgment affirmed in both cases. Ellington, C. J., and Phipps, P. J., concur.*

---

[47] *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008); *see Head v. State*, 288 Ga. App. 205, 208 (2) (653 SE2d 540) (2007) (holding that counsel's failure to request a mistrial did not constitute ineffective assistance because it affirmatively appeared from the record that the trial court in its discretion would have denied the request). We further note that if Calderon's trial counsel had objected to the court's instruction, he would have been attempting to profit from his own earlier error. And "[o]ne cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice." *Borders v. State*, 285 Ga. App. 337, 340 (2) (646 SE2d 319) (2007) (punctuation omitted).

[48] *See Lowe v. State*, 310 Ga. App. 242, 245 (2) (b) (712 SE2d 633) (2011) (holding that defendant failed to show that he was prejudiced by trial counsel's alleged deficient performance in light of the fact that there was overwhelming evidence that defendant possessed the cocaine found in the house he rented).