**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD AND MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 18, 2016**

# In the Court of Appeals of Georgia

A15A1791. MANTOOTH v. STATE.                                    ME-036C

MERCIER, Judge.

Harold Mantooth appeals his conviction for possession of a firearm by a convicted felon under OCGA § 16-11-131 (b), as well as his conviction for possession of less than one gram of methamphetamine under OCGA § 16-13-30 (a). Mantooth contends there was insufficient evidence for a jury to find that he possessed a firearm, and that even if the State proved possession, it failed to prove that the object possessed was a firearm as defined in OCGA § 16-11-131. Mantooth argues next that the trial court erred in denying his motion for a directed verdict as to the count of possession of methamphetamine. Finding no error, we affirm.

1. Mantooth argues that there was insufficient evidence that he possessed the object the State contends was a firearm. Furthermore, he claims that even if

possession was proven no rational trier of fact could have found that the disassembled rifle was a firearm. For the following reasons, we disagree.

a. It is well established in considering the sufficiency of the evidence in a case involving a criminal conviction that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted). In doing so "[a]n appellate court does not weigh the evidence or judge the credibility of the witnesses but only determines whether the evidence to convict is sufficient under to standard of *Jackson v. Virginia*." *Krauss v. State*, 263 Ga. App. 488, 488 (1) (588 SE2d 239) (2003) (footnote omitted).

Viewed in this light, the evidence shows that in January 2014 two probation officers arrived unannounced at Mantooth's residence. Mantooth was on probation. The officers were met by Mantooth's mother, who informed the officers that Mantooth was in the apartment above the garage some 100 feet behind the house. The officers met Mantooth in the garage as he descended the stairs from the apartment. One of the officers noticed some unspent rifle shells laying on a table next to the

stairs. The other observed that Mantooth smelled of alcohol, and had a "chemical smell about him."

At that point the officers requested Mantooth's consent to search the living area of the apartment. He consented, and the officers proceeded upstairs into the apartment. Two other individuals were in the apartment at the time (T.A. and R.D.). After a brief search of the apartment the officers located what they identified as a firearm under two pillows on top of the bed. The officers then placed Mantooth in restraints and conducted a more thorough search of the premises. The search uncovered methamphetamine on the floor, three methamphetamine pipes under a couch cushion, gun parts, and pocket knives. The probation officers placed the items on a table, and waited until another officer arrived to process the evidence. Along with the contraband found in the apartment, another individual in the apartment, T.A., was found to have methamphetamine on his person. Mantooth was ultimately arrested, charged, and tried for possession of methamphetamine, and possession of a firearm by a convicted felon.

Mantooth argues first that there was insufficient evidence to find he possessed the purported firearm. "The law recognizes two kinds of possession, actual possession

and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." *Smith v. State*, 316 Ga. App. 175, 177 (1) (728 SE2d 808) (2012) (citation omitted). See also *Lockwood v. State*, 257 Ga. 796, 797-798 (364 SE2d 574) (1988). Here, it is undisputed that Mantooth did not actually possess the purported firearm. Instead Mantooth had just exited the apartment where the firearm was found. The State was therefore required to prove constructive possession.

> A person is in constructive possession of an object when he knowingly has both the power and intention at a given time to exercise dominion over the object. A finding of constructive possession must be based upon some connection between the defendant and the contraband other than spatial proximity. Evidence of mere presence at the scene of the crime, and nothing more to show participation of a defendant in the illegal act, is insufficient to support a conviction.

*Fluker v. State*, 296 Ga. App. 347, 349 (674 SE2d 404) (2009) (citations and punctuation omitted).

"Constructive possession is sufficient to show violation of the statute, and it may be proved by circumstantial evidence." *Mask v. State*, 309 Ga. App. 761, 763 (2) (711 SE2d 348) (2011). During the trial the jury heard evidence that Mantooth was

4

more than merely present at the apartment where the firearm was found. On previous occasions Mantooth had been present in the apartment when probation officers visited him. In fact one probation officer testified that Mantooth had been in the apartment every time he had visited, except for one occasion when Mantooth was in the driveway. T.A., another individual arrested at the same time, testified that when visiting Mantooth on previous occasions he had met Mantooth at the apartment above the garage, and he also testified that Mantooth kept personal belongings in the apartment. Furthermore, Mantooth's mother testified that Mantooth had access to the apartment "at any time". T.A. testified that he had seen the firearm at the apartment, and he had not brought it there. When they entered the garage, the probation officers found rifle ammunition lying on a table at the base of the stairs leading to the apartment. After conducting a search, the officers then located the parts of a disassembled rifle.

The trial court instructed the jury during its charge on, among other things, mere presence, intent, actual and constructive possession, sole and joint possession, and equal opportunity.

"As long as there is slight evidence of access, power, and intention to exercise control or dominion over the contraband, the question of fact regarding constructive possession remains within the domain of the trier of fact." *Ferrell v. State*, 312 Ga. 122, 124 (1) (717 SE2d 705) (2011) (punctuation and footnote omitted).

We conclude that the evidence presented was sufficient for the jury to find beyond a reasonable doubt that Mantooth had access, power, and intention to exercise dominion or control over the firearm found in the apartment. See *Smith v. State*, 316 Ga. App. 175, 178 (1) (728 SE2d 808) (2012); *Layne v. State*, 313 Ga. App. 608, 612 (2) (722 SE2d 351) (2012); compare *Peppers v. State*, 315 Ga. App. 770, 772 (728 SE2d 286) (2012). As a result, it was authorized to find him guilty of possession of a firearm by a convicted felon.

b. Mantooth contends further that even if the State proved possession, the jury could not have found that the disassembled rifle was a firearm. OCGA § 16-11-131 (a) (2) defines a firearm as "any handgun, rifle, shotgun, or other weapon which will or can be converted to expel a projectile by the action of an explosive or electrical charge." Mantooth argues that the rifle as it was found in the apartment did not meet the definition of a firearm under OCGA § 16-11-131(a)(2) because it did not possess

what he terms the "essential characteristics of a firearm," and the State failed to demonstrate that he could have rendered the weapon capable of firing a projectile. Mantooth argues that this is an issue of first impression because it has never been addressed in Georgia law. His contention is without merit.

In enacting OCGA § 16-11-131, the General Assembly sought "to keep guns out of the hands of those individuals who by their prior conduct had demonstrated that they may not possess a firearm without being a threat to society." *Landers v. State*, 250 Ga. 501, 503 (3) (299 SE2d 707) (1983).

This Court has declined in the past to interpret OCGA § 16-11-131 as requiring proof that a weapon possessed by a convicted felon is actually functional when it is one enumerated within the statutory definition of firearm. See *Senior v. State*, 277 Ga. App. 197, 197-198 (626 SE2d 169) (2006); *Bryant v. State*, 169 Ga. App. 764, 764 (1) (315 SE2d 257) (1984). Today, we likewise decline to interpret OCGA § 16-11-131 as requiring proof that a weapon possesses the "essential characteristics of a firearm" when the law does not include such a standard and it is a weapon that is specifically enumerated within the statutory definition of firearm, i.e., a handgun, rifle, or shotgun.

In analyzing the meaning of a statute we as an appellate court must "presume that the General Assembly meant what it said and said what it meant." *In re L.T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014). See also *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a), (751 SE2d 337) (2013) citing *Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245(1) (734 SE2d 55) (2012) (citation omitted). Where the language of a statute is plain and susceptible to only one natural and reasonable construction appellate courts must construe the statute accordingly. *Deal*, 294 Ga. at 172-173 (1) (a).

Construing OCGA § 16-11-131 with these principles in mind, we conclude that the General Assembly meant to prohibit convicted felons from possessing those firearms enumerated in the statutory definition without respect to their level of assembly, functionality, or their possession of the "essential characteristics of a firearm." The General Assembly specifically enumerates handguns, rifles, and shotguns as firearms convicted felons are prohibited from having in their possession. These enumerated terms are not qualified in any way by the relevant statutory text. Thus, the plain meaning of the statute is that a convicted felon may not possess one of these enumerated firearms, regardless of its state of assembly. Consequently, the

jury was authorized to find that the disassembled rifle was a firearm within the statutory definition.

Therefore, in order to support the conviction, the State only needed to prove beyond a reasonable doubt that Mantooth was a convicted felon and that he possessed a firearm as defined above. It did so.

2. Mantooth contends that the trial court erred in denying his motion for directed verdict of acquittal because the State failed to prove that he possessed the methamphetamine found in the apartment. This enumeration of error is without merit.

> A motion for a directed verdict should be granted only when there is no conflict in the evidence and the evidence demands a verdict of acquittal as a matter of law. The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction: the evidence must be sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. The evidence must be viewed in the light most favorable to support the verdict and the defendant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine the credibility of witnesses.

*Smith v. State*, 316 Ga. App. 175, 175 (1) (728 SE2d 808) (2012) (citing *Hughes v. State*, 297 Ga. 217 (676 SE2d 852) (2009)) See also *Bray v. State*, 294 Ga. App.562,

9

563 (1) (669 SE2d 509) (2008) ("A jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it.") (citation and punctuation omitted).

Mantooth was arrested for possession of methamphetamine because he was in an apartment where methamphetamine was also located and he had access, power, and intention to exercise dominion or control over the methamphetamine. The methamphetamine was not found on his person, but instead only in his general vicinity. His argument turns on whether the jury had evidence with which to find that he possessed the methamphetamine.

Our analysis of the sufficiency of the evidence as to possession of methamphetamine is identical to the analysis done with respect to possession of a firearm by a convicted felon. "The law recognizes two kinds of possession, actual possession and constructive possession. A person who knowingly has direct physical control over a thing at a given time is in actual possession of it." See *Smith,* supra. Here, as just as with Mantooth's conviction of possession of a firearm by a convicted felon, it is undisputed that Mantooth was not in actual possession of

10

methamphetamine, so the State was required to prove constructive possession. See *Fluker,* supra.

In addition to the facts presented to the jury concerning Mantooth's access to the apartment, the State presented facts with respect to the methamphetamine. T.A. testified that he only brought one bag of methamphetamine with him , but two bags of methamphetamine were found in the apartment. He also claimed that his friendship with Mantooth was based on drugs. The jury heard that R.D., the third individual in the apartment, neither brought methamphetamine to the apartment nor used any while there.

"As long as there is slight evidence of access, power, and intention to exercise control or dominion over the contraband, the question of fact regarding constructive possession remains within the domain of the trier of fact." *Ferrell v. State*, 312 Ga. 122, 124 (1) (717 SE2d 705) (2011) (punctuation and footnote omitted). We conclude that the evidence presented was sufficient for the jury to find beyond a reasonable doubt that Mantooth had both the power and intention to exercise dominion or control over the methamphetamine found in the apartment. See *Smith v. State*, 316 Ga. App.

175, 178 (1) (728 SE2d 808) (2012). As a result, Mantooth was not entitled to a directed verdict of acquittal.

*Judgment affirmed. Ellington P.J., and Dillard J., concur.*